Judge Roane,
delivered the opinion of the court:
The court is of opinion, that although wheat may be\ exchanged for flour, as «'ell as sold for money, so as to operate a transmutation of the property in it, from the vendor to the vendee, it may also be the subject of bail»/ incut, both for the mere purpose of safe keeping, and for that of being converted into flour, for the use of the bailor. A bailment of tills last kind, is called, in the books, locatio operis faciendi, and undeniably exists in the case of a single bailment, and where the flour of the samel wheat is to be received in return. But the character ofj the transaction is not lost, when, for general convenience,) the wheat delivered at a mill, by many customers, is^ agreed by a common usage, or otherwise, to be put into! a common stock, and when it is further agreed, that thej return is to be mad® out of the common mass of flour. ¡ These variations from the doctrine of a simple and indivi-' dual bailment, whereby each bailor was to receive the identical proceeds of Ids own wheat, it was competent for ’ a numerous class of bailors to make, without changing the character of the transaction. It may still be considered as a simple and individual bailment of the wheat, ; accompanied by an agreement of all the parties, (ihe bailees themselves not excepted,) that, for general convenience, these conditions should be superadded. They are conditions which impose no hardship on the bailee, hut, on the contrary, are inserted for his accommodation and convenience ; and in relation to the bailors, it is pro *10 bable that, without them, the wheat would not have been , received. While the convenience of the bailee is con-suited thereby, as aforesaid, it is not seen that any loss or injury will arise to the bailors therefrom. On the contrary, the wheat, deposited by all the other bailors, may have been better, than that of the appellant in the case before us; and if so, the custom in question would conduce to his benefit. At any rate, the parties to the contract had power to agree to these conditions; and they do not change the character of the transaction. They do not convert a bailment of the kind mentioned, into a sale or an exchange of the wheat for flour.
By the terms of this custom, this wheat is «to he ground” into flour, and when so ground, is to be « returned” to the farmers collectively taken. These circumstances completely negative the idea of a sale or exchange of the wheat, which would carry with it the transmutation of property. The property in the wheat is certainly not conveyed to the millers, when they could not sell the wheat in specie, without violating their contract, which is to grind it into flour; nor even sell the flour itself without, in like manner, violating their agreement to return it to the several bailors. That is a curious kind of ownership, in which the party has no absolute power over the subject, either in its original state, or after it has been manufactured. The millers, in this case, have the absolute ownership of nothing, but the excess of the flour which may remain to them, after returning the stipulated quantity to the several farmers. This consti^" tutes their profit in the contract, and over this portion of the subject, alone, have they the absolute right of property. That right, as to the residue, remains in the farmers, and has never been surrendered by them.
These two circumstances, so utterly incompatible with the idea of a right of property in the millers, in the wheat or flour in controversy, conclude that question, as at the' time of the contract. At that time they estopped the ap-' *11 polices from claiming the wheat, as their wheat. The millers, by their receipts given at the time, even expressly say, that the wheat is received, “ to be groundwhich excludes the idea of an absolute owhership of the wheat itself. The construction arising out of these receipts, being the act of both the parties to the contract, at the time, outweighs a seeming exposition of the contract, by the appellees only, at a future time, in relation to the wheat of Sterne. They certainly do, when they are combined with the other circumstances.
This wheat, then, remaining the property of the bailors, and being accidentally burnt by fire, the loss must be borne by them. It must be so borne, because, however it might be under other circumstances, it is expressly found, that there was in the mill, at the time of the fire, flour &c. enough to satisfy all the claims upon the mill, for the same. Thereafter, it was the fault of the appellant, that his portion of it was not demanded, and taken away. lie shall, therefore, bear the loss. It is even stronger than the case put in Bacon, voL 1, p. 554, where it is held, that if A deliver goods to B, (a carrier,) to be carried from C to D, and then fowarded to E, arad B carries them to D, and puts them in his warehouse, in which they are destroyed by fire, before an opportunity offered to forward them to E, B was adjudged not to be liable. In this case, if the appellant had not neglected to call for the flour, after it was ready, the loss in question would not have happened. We are all, therefore, of opinion, to affirm the judgment.