### SMITH and others *vs.* CLARK.

Where a contract was made between a *miller* and other persons, for the manufacture of wheat into flour, he engaging on his part for every four bushels and 55 pounds of wheat received, to deliver one barrel of superfine flour, and there was no stipulation or understanding that the wheat delivered should be kept *separate* from other grain, or that the *identical wheat* should be returned in the form of flour: *it was held*, that the transaction between the parties constituted a *sale* and not a *bailment*, and that the owners of the wheat could not maintain an action for the conversion of the flour manufactured from the wheat.

*It was further held* in this case, that even had the flour after its manufacture been delivered by the miller to the other parties, but permitted to remain in his possession, that they could not maintain an action of *replevin* in the *cepit* against any person, who subsequently came to the possession of the same by *delivery* from the miller ; to charge such person, the action should have been in the *detinet* only.

THIS was an action of *replevin* tried at the Yates circuit in June, 1838, before the Hon. DANIEL MOSELEY, one of the circuit judges.

The plaintiffs declared for the *taking* and *detaining* of 75 barrels of wheat flour. The defendant pleaded *non cepit* and *property* in himself. On the trial the following facts appeared : *Charles Hubbard* owned a flouring and custom mill on the outlet of the Crooked lake. In December 1834, the plaintiffs made an agreement with him to deliver wheat at his mill, and he agreed that for every 4 bushels and 55 pounds of wheat which should be received, he would deliver the plaintiffs one barrel of superfine flour, warranted to bear inspection in Albany or New York. The plaintiffs

purchased from farmers and others, nearly 2000 bushels of wheat which was from time to time delivered at the mill, and put into a bin with other wheat which Hubbard purchased on his own account, and with the *toll wheat* taken by him from time to time. Hubbard delivered 230 barrels of flour to the plaintiffs, but that was not enough to satisfy his contract. On the 25th March, 1835, he sold 100 barrels of flour to the defendant, and in May following, delivered him the 75 barrels of flour in question, in pursuance of the contract of sale. The plaintiffs brought this action and arrested the property on board a canal boat, in which the defendant had caused it to be shipped for market. Hubbard also sold between 30 and 50 barrels of flour at retail, and took 10 or 12 bushels of wheat for his own use. All the wheat manufactured and used by Hubbard was taken from the same bin. The plaintiffs attempted to prove that the 75 barrels of flour in question had been delivered to them by Hubbard.

The defendant moved for a nonsuit, which was refused, and raised other questions on the charge of the judge, which are noticed in the opinion of the court. The jury, under the charge of the judge, found a verdict for the plaintiffs, and the defendant now moved for a new trial.

*H. Welles & S. Stevens*, for defendant.

*S. Cheever*, for plaintiffs.

*By the Court*, Bronson, J. The contract between the plaintiffs and Hubbard was, in effect, one of sale—not of bailment. The property in the wheat passed from the plaintiffs at the time it was delivered at the mill, and Hubbard became a debtor, and was bound to pay for the grain in flour, of the specified description and quantity. There was no agreement or understanding, that the wheat delivered by the plaintiffs should be kept separate from other grain, or that this identical wheat should be returned in the form of flour. Hubbard was only to deliver flour of a particular quality, and it was wholly unimportant whether it was manufactured from this or other grain. Jones on Bail. 102, 64.

Smith v. Clark.

A different doctrine was laid down in *Seymour* v. *Brown*, 19 Johns. R. 44 ; but the authority of that case has often been questioned, 2 Kent, 589 ; Story on Bail. 193–4, 285 ; *Buffum* v. *Merry*, 3 Mason, 478 ; and the decision was virtually overruled in *Hurd* v. *West*, 7 Cow. 752, and see p. 756, note. The case of *Slaughter* v. *Green*, 1 Rand. (Va.) R. 3, is much like *Seymour* v. *Brown*. They were both hard cases, and have made bad precedents.

There was, I think, no evidence which would authorize the jury to find that the flour in question had been delivered by Hubbard to the plaintiffs. There certainly was no direct evidence of that fact, and Hubbard himself testified expressly that there had been no delivery. The proof given by the plaintiffs of what Hubbard had said to others about the flour in the mill, was not necessarily inconsistent with his testimony.

But if there had been a delivery, so that the property in the flour passed to the plaintiffs, they still labor under a difficulty in relation to the form of the remedy. Notwithstanding the transfer, the property was left in the possession and under the care of Hubbard. He was a bailee of the goods, and as such would have been answerable to the plaintiffs for any loss happening through gross negligence on his part. The defendant took the flour on delivery from the bailee, who had a special property in it. Such a taking is not *tortious*. *Marshall* v. *Davis*, 1 Wend. 109. *Earll* v. *Camp*, 16 Wend. 570. The plaintiffs should have counted on the *detention*, not on the *taking* of the goods. *Randall* v. *Cook*, 17 Wend. 57. 10 Wend. 629. There must be a new trial.

New trial granted.