COURT OF APPEALS, SEPTEMBER TERM, 1847.

## MOAK, Plaintiff in Error, vs. FOLAND, Defendant in Error.

Where questions of fact arise in a cause before a justice of the peace, and evidence is given upon both sides in relation thereto, which is conflicting, it is for the justice to decide such questions, and having done so, this court will not reverse the judgment, although it may seem, that the weight of evidence is against his decision.

Thus, where Plaintiff let Defendant have his farm for two years, and with the farm a number of fowls, and at the end of one year an agreement was entered into between the parties that Defendant should give up the farm—which he did, but took away the fowls; and Plaintiff sued him in trover, and the evidence was conflicting on the trial whether the contract between the parties constituted a *sale* or *bailment* as to the fowls; *held*, that the justice having decided such question upon the evidence introduced on the trial, and given judgment thereon, it should be held conclusive.

*Calendar cause.*—This suit was brought in a justice's court in the county of Otsego, to recover in an action of trover, the value of certain fowls Moak, (the Defendant below) had received of Foland, (the Plaintiff below) under a contract between the parties for the keeping of the fowls and the division of the eggs, and which after the expiration of the contract, the Defendant (as was alleged) converted to his own use.

The contract originally made, authorised the Defendant to keep the fowls which were left by the Plaintiff on a farm he had rented to the Defendant during the term of his tenancy, which was two years. He also left other personal property on the farm with the Defendant, during the same term. Before the expiration of the lease, a subsequent agreement was made between the parties that the Defendant should leave the

Plaintiff's premises at an earlier period than that specified in the lease. The Defendant, on leaving the premises, carried with him the fowls; to recover their value the suit was brought.

*Jacob Moak,* father of the Defendant, was introduced by the Plaintiff (Foland) as a witness, who testified that he resided with the Defendant on the Plaintiff's farm from April, 1844, to March, 1845 : left Defendant on the farm when he moved away; Defendant had in his possession at the time he lived there some hens of Foland's; there might have been forty of them ; might not have been half of that number; witness had thirty hens of his own there; Foland's hens were there when witness went there; there was a large flock; thought there might have been forty besides witness's. *Cross-examined:* Said he was informed by the Plaintiff that he (Plaintiff) had hens at his son's; Plaintiff told him so, soon after witness moved there; witness had seen Plaintiff take away some hens from Defendant's after that time ; took at one time seven or eight, which were in Defendant's possession. *Direct:* Plaintiff was to have all the eggs of his own hens for a certain time, but not the whole season; had heard both parties say so; thought that Plaintiff was to have three eggs to Defendant's five; the division of the eggs ceased about the 1st of August. *Cross:* At the time Defendant told witness that Plaintiff was to have eggs from his own hens, he also stated that Plaintiff was to have the first run of eggs; that Plaintiff was to have nothing more to do with the hens, until two years had expired that Defendant had hired Plaintiff's place; heard Plaintiff say that he had let Defendant have the hens for the period of two years that Defendant had hired the place. *Direct:* When Plaintiff left the farm he left the hens there; Defendant had left the farm of Plaintiff; he made an agreement with him before witness moved away; did not recollect of any thing being said about Defendant having the privilege of taking off the hens from the place. *Cross:* Defendant was to leave the same number of hens he had of Plaintiff on the farm, when his time was out; did not know of anything being said that Defendant was to leave the same hens; Defendant made an agreement with Plaintiff in February to leave the farm; Plaintiff was to pay Defendant $22, which was to settle all concerns up to that date, and Defendant was to give up the farm on the 1st of April following; did not hear anything said in relation to the hens in that settlement; witness was called by the parties as a witness to the bargain. *Direct:* The $22 was for fall ploughing, drawing stone, and other matters between them. Plaintiff stated the settlement without mentioning the items that constituted the $22; nothing

was said except that the $22 settled up all matters between them to that date; did not recollect of any item being mentioned.

*Zachariah Foland,* father of Plaintiff, sworn: Had a conversation with Defendant at Defendant's barn, shortly after the settlement between the parties, about the hens on the premises occupied by Defendant; witness remarked, that Defendant had quite a number of hens; to which Defendant replied yes, but when my father takes away his, and Hank (the Plaintiff) his, I shall not have many left, because a great many have got away; Defendant did not speak of the number of hens Henry had there; witness should think there were sixty or seventy hens there. *Cross-examined:* The settlement was made at witness's house; witness said, "this settles all things, up to this time," Defendant said yes; Plaintiff said, it is paid ($22) for fall ploughing, drawing stone, and leaving the place; there was nothing said about the hens; it was stated that every thing was settled up to that date.

*James Foland,* brother of Plaintiff, sworn: Was present when the terms of settlement were agreed on; Defendant was to give Plaintiff all he had had of him, and leave the farm on the 1st day of April; nothing was said of any particular item that he had had of him. *Cross-examined:* The agreement was made in the fore part of January; they were talking about Defendant's giving up possession of the farm; knew Defendant had hired Plaintiff's farm for two years, and the talk was about giving up the farm for the coming year. Plaintiff agreed to give Defendant $22 if he would give up possession of the farm. Fall ploughing was spoken of, drawing stone, making stone wall; the fall ploughing and drawing stone amounted to $22; there was no other account that witness knew of; they talked over all their matters. Defendant let witness have two hens for Plaintiff, which he took away; witness did not recollect any thing being said at the settlement in relation to the hens; Plaintiff and Defendant had some dispute after the settlement as to whether the hens were mentioned. Witness told them he could not recollect; Plaintiff alleged that he reserved the hens in the settlement; the Defendant denied that he had. *Direct:* Plaintiff left with Defendant other personal property besides the hens; he left a fanning mill, grind-stone and stove; they remained there until after the settlement in the winter. *Cross:* At the time of the conversation about the settlement between the parties, the fanning mill and grind-stone were not mentioned.

*Zachariah Foland, recalled:* After the settlement, witness was at Defendant's house, and Defendant brought out a pair of andirons and gave them to Plaintiff, they were a pair that Plaintiff left there.

Plaintiff introduced witnesses to prove the carrying away of the hens by Defendant, and their value.

*John Welch*, *sworn for the defence*: Had heard the Plaintiff, in March, speak of the Defendant having some hens of him; Plaintiff said he had let Defendant have some hens for two years; that Plaintiff and Defendant had made arrangements, and Plaintiff had taken the place back, and had paid Defendant $22; and because Plaintiff had not mentioned about the fowls when he made the arrangements, Defendant was going to keep them and move them off. *Cross-examined:* The substance of what Plaintiff said, was, that he had let Defendant have fowls, and Defendant had said he was going to take them away when he moved.

*Robert Cady*, *sworn for defence:* Heard Plaintiff say that he had let Defendant have some hens; it was about a year ago; Plaintiff said he had let Defendant have some hens—forty of them; out of the forty he was to have ten; Plaintiff was to have the eggs of his hens until harvest time, and Defendant was then to have them for two years; and at the end of two years he was to deliver to Plaintiff thirty hens; Plaintiff did not say that Defendant was to return the same hens; Defendant was to return thirty hens at the end of two years.

Defendant introduced witnesses to prove the value of the hens.

On the 24th of April, 1845, the justice rendered judgment against the Defendant for $8.12, damages, and $4.66, costs. The judgment was reversed on certiorari by the Otsego common pleas, and affirmed by the supreme court on a writ of error; the latter court reversing the judgment of reversal of the common pleas. The cause was then removed to the court for the correction of errors by the Defendant.

The following is the opinion of the supreme court, upon reversing the judgment of common pleas, and affirming that of the justice.

"By the Court, JEWETT, Justice.—The principal question on the trial was one of fact; whether the contract entered into between the parties in relation to the fowls, created the relation of bailor and bailee between the parties, or whether it was a contract of sale of the fowls to the Defendant. If the former, the conduct of the defendant in regard to his trust was such as was equivalent to a conversion; but if it amounted to a sale, the action could not be sustained. The evidence was conflicting upon the question; and although I am inclined to think the weight of the evidence was against the conclusion to which the justice arrived, the judgment should not have been reversed on that ground."

C. D. COLMAN, for Plaintiff in error, insisted that the contract, by virtue of which the Defendant acquired the possession of the fowls, was

one of *sale* and not a bailment; that there was no *understanding* or *agreement* between the parties to the contract, that the *identical fowls* should be returned at the end of the term. (21 Wend. 83.) That there was an express agreement or understanding between the parties that the Defendant was to return the *same number* of fowls at the end of the term.

If the contract was one of *bailment* and not a *sale*, it was a bailment for the term of two years; the subsequent arrangement made between the parties in January, 1845, in no manner changed the rights which the parties had acquired by virtue of the contract in relation to the fowls, nor did it change the *possession* or the rights of the Defendant to the possession of the fowls for the term of two years.

A. DEAN, for Defendant in error, insisted, that the Plaintiff had not parted with the ownership of the fowls, but, that the same fowls were to be returned to him, and that the Defendant had acquired merely a possessory right to be enjoyed while he occupied the farm, and that their removal by Defendant from the demised premises was a conversion.

The questions whether the contract or contracts under which the parties acquired their respective rights constituted a bailment or sale of the fowls, and whether their removal by the Defendant from the demised premises was a conversion, and what amount of damages the Plaintiff had sustained thereby, were questions of fact, controverted on the trial, submitted to and passed upon by the justice, and his decision thereon was conclusive. (18 Wend., 141; 1 Denio, 25, 27.)

*This Court* (upon the argument) decided, that the questions arising before the justice in the cause, were questions of fact. That evidence was given upon both sides, and that it was for the justice before whom the cause was tried, to decide those questions, and that having done so, the court of common pleas was erroneous in reversing his judgment.

The decision of the supreme court was unanimously affirmed.