MONROE GENERAL TERM, March, 1848. *Maynard, Welles, and Selden,* Justices.

## BAKER and others *vs.* WOODRUFF.

Where a contract was made, between a miller and other persons, by which the former agreed to take from the latter wheat and give them one barrel of superfine flour for every four bushels and 36lbs. of wheat, and to warrant the flour to pass inspection; *Held* that the contract was one of *sale* and not of *bailment;* and that the destruction of the wheat, after its delivery, by the burning of the mill, was the loss of the miller, and was no defence to an action for the price.

The case of *Smith* v. *Clark* (21 *Wend. Rep.* 83) approved; and the principal point there decided—as to the nature and effect of the contract—shown not to have been overruled by the decision of the court of errors reversing the judgment of the supreme court, in that case; the judgment having been reversed upon other grounds.

Baker v. Woodruff.

THIS was an action of assumpsit, tried at the circuit in the county of Onondaga, in December, 1846, before the Hon. BOWEN WHITING, late one of the circuit judges. On the trial, the plaintiffs gave in evidence a written agreement between them and the defendant, in the words and figures following: "I agree to take all the wheat that Norton, Baker & Hall have at the store house of S. H. Cook, in Camillus, and also all the wheat they have at the store house of E. Shead, in Bellisle, and give them one barrel of first rate superfine flour, at my mill in Salina, for every four bushels and 36-60ths bushels of wheat. I am to take the wheat at the storehouses, and pack the flour in first rate barrels, and warrant the flour to pass inspection in Albany or New-York market, for good superfine flour. One half of the flour to be delivered on Friday of next week, and the balance on Friday of week after, and as much sooner as I can make it. The wheat is to be of good merchantable quality. Salina, Oct. 2, '45. J. C. WOODRUFF.

NORTON, BAKER & HALL."

The plaintiffs further proved that they delivered to the defendant, under and in pursuance of the above contract, two boat loads of wheat, containing in all 3848 bushels; viz. one load of 1878 bushels on the 6th, and another of 1970 bushels on the 8th of October, 1845, which the defendant put into his mill, and mixed it with other wheat which he had there. That on the 10th day of October, the defendant delivered to the plaintiffs 420½ barrels of flour in pursuance of the same contract. It was admitted, that on the night of the 12th day of October, 1845, the defendant's mill accidentally took fire, and was consumed, with all its contents, excepting from 25 to 30 barrels of flour, without any neglect or fault of the defendant, or his agents. That there was in the mill, at the time of the fire, about from 150 to 175 barrels of flour packed, and only the above 25 to 30 barrels of which was saved. That there was also in the mill, at the time of the fire, about 4000 bushels of wheat, which included the greater part of the 1970 bushels above mentioned, delivered on the 8th of October. Also that at the date of the said written agreement, the defendant carried

on the flouring business. The plaintiffs further proved, that the kind of flour mentioned in the contract was worth at wholesale, at the mill of the defendant in Salina, on the 17th day of October, 1845, $5,00 per barrel, and that the whole amount due the plaintiffs on said contract, at $5,00 per barrel, including interest, was $2153,46 after deducting the flour which had been delivered thereon as aforesaid. The defendant's counsel inquired of a witness who was present when the written agreement was entered into, what was said by the parties at that time? The plaintiffs' counsel objected to the inquiry, but the circuit judge overruled the objection, and the plaintiffs' counsel excepted. The witness answered that he was present at the negotiation at the time the contract was made. That the plaintiff Hall looked at the wheat the defendant was then grinding, and the conversation was as to the quality of the flour. Hall asked the defendant if he would give him a first rate article. He wanted as good an article as defendant was then making, and the defendant agreed to give it—such as he was making every day. The plaintiffs here rested; upon which the defendant's counsel moved for a nonsuit, on the ground that the contract which the plaintiffs had proved, and on which they claimed to recover, was a contract of bailment, and not of sale; and the mill of the defendant having been accidentally consumed by fire, without the fault or negligence of the defendant or his agents, and by which the wheat and flour in question were lost, the plaintiffs could not recover. His honor the circuit judge decided, that the contract was in law a contract of bailment and not of sale; and upon that ground granted the motion and nonsuited the plaintiffs; to which decision the plaintiffs' counsel excepted.

A motion was now made to set aside the nonsuit, and for a new trial.

*James R. Lawrence*, for the plaintiffs.

*B. Davis Noxon*, for the defendant.

Baker *v.* Woodruff.

*By the Court*, WELLES, J. The contract under which the wheat in question was received by the defendant, was clearly one of sale, and not of bailment. Upon the delivery of the wheat by the plaintiffs, it became the property of the defendant, and he thereupon became liable to the plaintiffs to pay for it in flour, according to the terms of the contract; and it was entirely immaterial whether the flour should be made of the wheat delivered by the plaintiffs, or out of other wheat. The destruction of the property after it was delivered, by the burning of the mill and contents, was the defendant's loss, and was no defence to this action. (*Noy's Maxims*, 91, *marg. paging*, ch. 93. *Bac. Abr. Bail. C. Jones on Bail.* 69.) This case cannot be distinguished in principle, in regard to the construction of the contract, from that of *Smith* v. *Clark*, (21 *Wend. Rep.* 83.) That case, it is true, was afterwards taken to the court for the correction of errors and judgment of reversal pro-nounced; and from that circumstance an impression has been entertained, to a considerable extent, that the principle decided by the late supreme court in the case as reported in 21 *Wend.* has been overruled in the court for the correction of errors. But such was not the case. After the decision as reported, the cause went down to trial at the circuit, and a verdict was found for the defendant. The contract between the plaintiffs, in that case, and Hubbard, was not in writing, and the question what it in fact was, rested entirely upon the parol testimony of witnesses, and principally upon that of Hubbard himself; which was assailed on the ground, as alleged by the plaintiffs, of his having made statements out of court on the subject of the ownership of the flour, inconsistent with his testimony, and upon the ground of alleged discrepancies between his direct and cross-examinations. There was a question also whether the flour had been delivered to the plaintiffs; upon which evidence had been given on both sides. The questions were in effect taken from the jury by the circuit judge, who charged them that the contract was in fact one of sale and not of bailment; and that there was no evidence which would authorize

Baker *v.* Woodruff.

the jury to find that the flour in question had been delivered by Hubbard to the plaintiffs. The plaintiffs excepted to the charge, and moved for a new trial, which was denied, and judgment was perfected for the defendant. Upon that judgment the writ of error was brought, and the court for the correction of errors reversed the judgment; a majority of the members who voted being of the opinion that the questions of what the contract in fact was, and whether the flour had been delivered by Hubbard to the plaintiffs, should have been submitted to the jury. There never has been any report of the case in the court for the correction of errors; for the reason, as it is supposed, that no principle was settled by it, and that the doctrine of the law of bailment, as held by the supreme court in the case as reported, was not intended to be disturbed. The case, therefore, as reported in 21 *Wend.* I think should be regarded as a sound exposition of the law. The only case or dictum in the courts of this state which stands opposed to it, is the case of *Seymour* v. *Brown,* (19 *John. Rep.* 44.) The latter is unsupported, so far as I have been able to discover, excepting by the case in Virginia of *Slaughter* v. *Green,* (1 *Rand. Rep.* 3.) The current of authorities is the other way, and so, in my opinion, is the good sense and reason of the case. (*Jones on Bail.* 102, 64. 2 *Kent's Com.* 589, ed. of 1832. *Story on Bail.* § 283, 438. *Buffum* v. *Merry,* 3 *Mason's Rep.* 478. *Hurd* v. *West,* 7 *Cowen's Rep.* 752, 756, note. *Ewing* v. *French,* 1 *Blackf. Ind. Rep.* 353, note 2.)

The nonsuit was probably granted under a mistaken apprehension of the effect of the decision in the court for the correction of errors, in the case of *Smith* v. *Clark.* The evidence of the conversation between the parties at the time the agreement was entered into, was clearly inadmissible. Its only tendency was to change the terms of the written contract, by which the defendant was bound to give a barrel of *first rate superfine flour,* &c. for every four bushels and 36lbs of wheat. The ruling of the circuit judge, on this point, probably made no difference in the result; but the point is distinctly made in

the bill of exceptions, and may arise on another trial, and is therefore disposed of.

The nonsuit must be set aside, and a new trial granted, with costs to abide the event of the suit.