May 29. By the Court. Sandford, J.
There was no sale of the barrels by the plaintiff to Sherburne & Son.
*55 The evidence shows that when the plaintiff sold ale to that firm, he loaned to them the barrels in which the ale was contained, to be returned to him as soon as the ale was drawn out; with an agreement that if, for apy cause, it became impossible for Sherburne & Son to return any of the barrels, they should pay for such barrels at a rate stipulated.
This agreement was for the benefit pf those purchasers, so that instead of being subjected to a suit for a tort in the event of their default to return all the beer casks at the proper time, they should be liable only for their value as upon a contract of sale at a fixed price.
When the beer casks in question were delivered to Sherburne & Son, they were the property of the plaintiffs. If they had been lost on the voyage to Boston, or burnt after their arrival there, the loss would have been his, and they continued to be his property up to the period that Sherburne & Son delivered them to the' defendant.
The cases of Smith v. Clark, 21 Wend. 83, and Norton v. Woodruff, 2 Comst. 153, to which we were referred, are not analogous—those were instances of the exchange of wheat for flour— the flour to be received was not to be the product of the wheat delivered. There was no stipulation or expectation that the flour to be returned was to be manufactured from the wheat so delivered.
The courts therefore held that there was no bailment of the wheat; that it was a sale payable in flour, and that the title to the wheat passed on its delivery. Here, by the contract between the plaintiff and Sherburne & Son, the casks in which the ale was delivered, branded with the plaintiff’s name—the specific thing were to be returned, and not a substitute. It is, therefore, moré like the case of Mallory v. Willis, 4 Comst. 76, where flour to be made out of the wheat delivered was to be furnished to the owner of the wheat, and the Court of Appeals decided that it was a bailment of the wheat and not a sale. And see 2nd Kent’s Com., 755, note 1, 7th ed.; Sargent v. Gile, 8 New Hampshire R. 325, and King v. Humphrey, 10 Penn. R. (by Barr) 217.
We were also referred to a case in the Supreme Court in this district (Westcott v. Thompson) involving in part the question *56 presented here. That court, reversing the finding of a referee, appears to have held on the evidence that there was a sale of the casks and not a bailment. The facts presented were somewhat different from those in the case before us. The plaintiff seems to have relied mainly upon proof of a usage in the trade, and it was shown that he received in return the barrels of other brewers in lieu of his own. These circumstances probably influenced the judgment of the Supreme Court in giving their decision upon the contract, and they make the case to differ so far from the one before us, that it does not possess the weight of an authority on the point. After fully regarding the views of that learned court, so far as the two cases are analogous, and carefully considering the point as it is presented to us, we were entirely convinced, as we have already stated, that the contract was one of bailment, and that there was no sale of the casks to Sherburne & Son.
The right set up by the defendant remains to be considered. He claims to be a purchaser of the casks in good faith, and to have the superior equity to retain them.
But first he takes the ground that Sherburne & Son had the election, if the delivery to them were a bailment, to keep the casks, if they thought proper, and to pay for them at the stipulated price.
"We do not so understand the contract. If the casks were in the store of Sherburne & Son empty, we have no doubt the plaintiff could compel their delivery to him, and maintain an action of replevin, if such delivery were refused. The privilege to account for the casks at the price agreed, was applicable only to the case of an inability to return the casks, not to a voluntary retention of them.
They might be unable from various circumstances, and an instance of a sale of the ale in casks to a remote town or a distant port, might be one of those circumstances. Without speculating, however, upon the precise nature or degree of the inability which would have entitled Sherburne & Son to pay for the casks instead of returning them, it is clear that such inability was the sole ground and extent of the privilege.
¡Next, the defendant’s right as a purchaser. While we hold the contract to have been a bailment only, at the same time *57 we are prepared to say, that as against the plaintiff the agreement for receiving the value of the casks which Sherburne & Son were unable to return, would in favor of a iond fide purchaser of the casks from them, without notice of the bailment, be evidence of an authority to them to sell the casks. It would be so on the ground, that the plaintiff in favor of such a purchaser ought to be estopped by that agreement, and the apparent ownership of Sherburne & Son, from denying that they had such an authority.
But the defendant does not stand in the position of a purchaser in good faith, who has paid value upon the strength of Sherburne & Son’s right to sell the casks. He bought the ale of them, with the understanding that the barrels were to be returned, or to be paid for. They were not paid for. The ale was sold to him when it was delivered. The barrels were not. If he had the pure option of electing to keep the casks and pay for them, he did not exercise the right. There is no evidence that he ever thought of keeping them until after Sherburne & Son failed. After that event, and some months after the casks had been demanded of him in behalf of the plaintiff, he attempted to pay for the casks to the assignee in bankruptcy of Sherburne & Son by offsetting their value against a protested note of that firm held by him. It does not appear that he had this note when the firm failed or when the casks were first demanded. And after that, it was too late for him to influence the plaintiff’s right as the real owner, to have the casks returned to him.
Besides all this, the evidence would warrant a jury in finding that the defendant received the casks from Sherburne & Son on the same terms and conditions that they received them from the plaintiff, and that he never had a right to elect to become the purchaser of the casks.
On both grounds we are clear that he had no just claim to withhold the casks from the plaintiff, and there must he a judgment for the latter for the amount of the verdict. Judgment for plaintiff.