Dayton v. Buford.

JAMES R. DAYTON

*vs.*

H. MARSHALL BUFORD.

The defendant, in reply to a letter from C., a real estate agent, and his agent for the sale of certain lands, asking for instructions, fixed a price at which he would sell, viz.: two thousand six hundred and forty dollars, either for cash, or one-half down, and the balance in one and two years, secured by notes and mortgages bearing nine per cent. interest. *Held,* that the nature and effect, and true interpretation of the correspondence was a question of fact for a jury, or referee.

Dayton v. Buford.

The rule laid down in *Havens vs. Humphrey*, 12 *Minn.* 298, that where there is any competent evidence reasonably tending to sustain the finding of a referee upon a question of fact, the finding will not be disturbed in this court, unless most manifestly and palpably against the weight of evidence, whether or not all the evidence before the referee was in writing, or printed, applied, and held to forbid the disturbing of the referee's finding, that defendant did by said letter limit and direct the terms upon which said agent might sell said lands.

Subsequent to such limitation of his authority, the agent conveyed such lands to plaintiff for three thousand dollars, one-half to be paid within thirty days, upon delivery of a deed, and balance in two years from that date, with ten per cent. annual interest. *Held*, not to be within the scope of his authority aforesaid, although, on the whole, apparently more favorable for defendant than the sale authorized prior to such limitation of authority aforesaid.

Defendant had told E. who lived near the lands to direct any person who might examine them to C. as the agent of defendant to sell the same, and this E. communicated to plaintiff before he applied to C. to buy them. *Held*, that where the subject of the power is the sale of real estate, such a representation would not justify an assumption that the agent's power was untrammelled, or excuse the plaintiff from ascertaining his actual authority.

The facts in this case are substantially as follows: In September, 1867, defendant caused a description of certain of his lands, amounting to 880 acres, to be entered in the books of one G. B. Cooley, a real estate agent and broker, in the county where such lands were situated, for the purpose of having the same sold through said Cooley as defendant's agent, and directed one John Ellis, who resided near such lands, to send any person who might examine them, to Cooley, as his agent to sell the same. June 15, 1868, Cooley wrote to defendant as follows: " Several parties have been looking at your lands in Hayfield, and enquiring price, terms, &c. Will you please send me your best cash price, also price, part cash, part time. It is difficult to sell land in that neighborhood on account of its situation. Yours might be sold for

$3.00 or $3.50, perhaps, an acre." In reply to this letter, June 29, 1868, defendant wrote, "If you can sell the whole of my land to prompt and responsible parties, I will take $3.00 an acre, either cash, or half down and the balance in one and two years, secured by notes bearing 9 per cent. interest, and a mortgage on the whole tract, or I will sell a portion of the land for $3.50 an acre, on same terms." On the 18th day of September, 1868, the plaintiff, who before that time had examined said lands and been told by Ellis the direction he had received from defendant, bargained with said Cooley, acting as agent of defendant, for all of said lands for the sum of three thousand dollars, of which sum fifteen hundred dollars was to be paid within thirty days, upon the delivery of a deed from defendant, and the balance in two years, with interest at ten per cent.; payment to be secured by mortgage on the premises. A memorandum in writing of this bargain was signed in the name of the defendant by Cooley as his agent and delivered to the plaintiff. The plaintiff in this suit seeks to enforce this bargain against defendant, and the important question is as to the authority of Cooley to bind his principal. The referee, finding the facts substantially as above, found, as a question of law, that the contract signed by Cooley was not within the scope of his authority, as the agent of defendant, and directed judgment to be entered against the plaintiff, who appeals therefrom to this court.

CORNELL & BRADLEY, for Appellant.

A. J. EDGERTON, for Respondent.

*By the Court.*—RIPLEY, CH. J.—The main error, in the plaintiff's view of the case, which led the referee to his conclusion that Cooley was not authorized to sell the lands upon the

Dayton v. Buford.

terms upon which he bargained them to the plaintiff, is in holding that the authority of Cooley, whatever it may have been prior to the letter of defendant of June 29th, 1868, was fixed and limited by that letter when it was received by Cooley, prior to the bargain with the plaintiff. He contends that the letter did not limit the agent's powers, for the reason that it was a confidential communication, intended to be kept secret, and not to be communicated to persons desiring to purchase. Whether that was the intention or not, is a question of fact. The plaintiff is therefore in error in supposing that the nature, effect, and true interpretation of the correspondence between Cooley and defendant is not a question of fact for a jury or referee, but of law for the court.

If, however, it is a question of fact, the plaintiff further suggests that the finding of the referee on the point is based wholly and exclusively upon the correspondence.

We are unable to see why the referee may not be supposed, like the plaintiff, to have construed the correspondence with reference to the actual state of things, and the existing relations of the parties. Supposing, nevertheless, that the plaintiff is right in his assumption, the general rule, that where there is any competent evidence reasonably tending to sustain the finding of a referee upon a question of fact, the finding will not be disturbed in this court, unless the finding is most manifestly and palpably against the weight of evidence, is not affected by the fact that all the evidence introduced before the referee was written or printed. *Havens vs. Humphrey*, 12 *Minn.* 298.

Upon these principles the finding is not to be disturbed. It may be admitted that by *best cash* price, the agent inquires for the lowest price at which defendant will sell for cash. Plaintiff's argument, however, is here built up upon an incorrect quotation of the whole sentence. " Send me your *best* price,

either cash, or part cash and part time," is by no means synonymous with, "send me your *best* cash price; also price, part cash, part time."

Whatever the force, however, of the italicised words, the agent goes on to inform the defendant that the land is difficult of sale; that it will not sell for more than three dollars to three dollars and a half per acre, and he is not certain that it will bring so much. That is the plain effect of the expression, that "yours might be sold for $3 or $3.50, perhaps, an acre." The defendant's answer must certainly be taken to have been made with reference to this statement. "As such is the case," he says, in effect, "If you can sell the whole of the land to prompt and responsible parties, I will take $3 an acre cash, or half down and the balance in one and two parts," &c.

We see no reason for supposing that he intended, or why the agent should have supposed that he intended that this instruction was to be kept secret. The *motive* for concealment is stated by the plaintiff to be the fact that disclosure would defeat any attempt to obtain a higher price than three dollars an acre. But if the defendant had no reasonable ground for expecting that the land could be sold in a body for more than three dollars an acre, what becomes of the motive?

The plaintiff's inference, as to the character of this correspondence, is partly based upon his construction of the 2d finding of fact. Cooley, he says, when he wrote his letter, "was, as the referee had expressly found, the agent of defendant in respect to the sale of these lands, with general plenary and unrestrained power and authority for that purpose."

There is no such express finding, however. The referee pointedly avoids a finding as to the extent of Cooley's authority. But whatever the fair inference may be from the facts found, if considered by themselves, there is evidence which tends to show that the agent did not conceive himself

Dayton v. Buford.

to have had this plenary and unrestricted power, and that the letter was written under no such impression. Cooley says, for instance, that "we tried to sell the lands at different times, but never set any price" till he got the defendant's letter, aforesaid. Why not, if his power was plenary? So, his letter states that "several parties have been looking at your land in Hayfield inquiring price, terms," &c. Upon such inquiries, instead of fixing price and terms, in pursuance of his supposed plenary power, he makes the request already quoted, whereby the defendant is asked to fix a price, not only in cash, but partly in cash and partly on time, necessarily including, however, a request for a statement of the terms as to deferred payments. It is certainly a fair inference from all this, that one object, at least, of the letter, was to enable the agent to give an answer to such inquiring parties, a power which the agent did not then conceive himself to have.

The letter thus looked at is seen to be inconsistent with the plaintiff's theory. Suppose, for instance, that this plaintiff had been one of such inquiring parties; what sensible reason could the agent have given for not fixing a price, if it were not that he must first ask his principal? When the principal fixed a price, would not the agent tell plaintiff what it was? Would not the plaintiff expect him to do so, and to tell the truth? What else could the defendant possibly expect?

Taking the referee's finding as conclusive, it is not enough, as he says, that the bargain actually made appears upon the whole to be more favorable for the defendant than the bargain which he authorized.

But the plaintiff takes exception to the referee's statement, that the terms of the bargain made differ materially from those authorized, in that, for instance, half of the purchase money was to remain on mortgage two years, instead of being divided, and one moiety thereof made payable in one year. The de-

parture, he says, was of a character which the parties could not have regarded as material.

There is no evidence in the case from which we can form any opinion as to how the defendant would have regarded it. Certainly the variation, in itself considered, is material. It cannot be said, as the plaintiff suggests, that the only difference was in favor of defendant, by securing better terms, and additional benefits.

With respect to the defendant's direction to Ellis, to inform persons who might examine the land, that Cooley was his agent to sell the land, we agree with the referee, that this was not such a representation as would naturally mislead a person of ordinary prudence, and that when the subject of the power is the sale of real estate, no one would be justified by such a representation, in assuming that the power of the agent was untrammelled, or excuse him from ascertaining the actual authority conferred upon him.

Judgment appealed from affirmed.