# Richmond.

## REHERD'S ADM'R v. CLEM & WENGER.

### NOVEMBER 14th, 1889.

Absent, Lacy, J., and Richardson, J.

1. BAILMENT—*Sale—Title to property.*—Where the article delivered is to be returned, though in an altered form, the transaction is a bailment and the title to the property is unchanged. Where another thing of equal value may be returned, the receiver becomes debtor to make the return, the transaction is a sale and the title is changed.

2. WITNESSES—*Competency—Parties—Agents.*—Where party is allowed to testify on the ground that transaction was with decedent's agent, a living and competent witness, his examination must be confined to so much of the transaction as was personally with the agent.

3. PAROL EVIDENCE—*Ambiguity—Instructions—Case at bar.*—Where receipt for wheat delivered in mill was ambiguous as to whether sale or bailment was intended, and there was evidence to support the theory that a sale had been made at a price to be fixed at any time by the seller: *held,* error to restrict the jury to the terms of the receipt for its interpretation.

4. CONTRACT OF SALE—*New trial—Case at bar.*—Where a motion for new trial is overruled and the decision excepted to, and it appears from the exceptee's evidence that they received exceptor's wheat, mixed it with and ground it as their own, sold the flour, and never during the eighteen months between receiving it and the destruction by fire of their mill, tendered the wheat itself, or other wheat, or flour to exceptor, nor after the fire, tendered him any of the wheat saved from the fire, and sold by exceptees as their own, and the receipt itself shows that the wheat was delivered on a contract for a sale, leaving only the price to be paid at the market rates on the day fixed by the exceptor: *held,* the denial of the motion was error.

Argued at Staunton.     Decided at Richmond.

Error to judgment of circuit court of Rockingham county, rendered April 13, 1889, in an action wherein the plaintiff in error, George E. Sipe, administrator of Wm. Reherd, deceased, is plaintiff, and D. R. Clem and Isaac Wenger, partners in business under the style of Clem & Wenger, are defendants. Opinion states the case.

*Sipe & Harris*, for the plaintiff in error.

*Wm. B. Compton* and *Strayer & Liggett*, for the appellees.

FAUNTLEROY, J., delivered the opinion of the court.

The facts, as shown by the record, are, that in June, 1866, William Reherd, then alive and about ninety-four or ninety-five years of age, delivered to Clem & Wenger, in their merchant flouring mill in Harrisonburg, Va., 701.51 bushels of wheat, which was received by Clem & Wenger and mixed indiscriminately with other wheat of the same grade, for which wagon receipts were given, as the wheat was delivered; and after it was all so delivered, the following paper was sent to William Reherd in place of the several wagon receipts, viz.:

" Received, June 4th, 1886, of William Reherd, seven hundred one and 51– of No. Two wheat in store, less five bushels paid Isaac Billhimer, for which we are to pay market price same quality of wheat whenever Mr. Reherd wants to sell same.                     CLEM & WENGER."

701, 51–60

5 Billhimer

696—51–60 Balance."

The mill was destroyed by fire December 23d, 1887 : there were 5,000 or 6,000 bushels of wheat in the mill at the time of the fire, of which 600 or 1,000 bushels was No. 2 wheat, separated and to itself, in the western or railroad garner.   The

Reherd wheat, after having been placed in wheat No. 2 bin at the time of its delivery, and mixed with other No. 2 wheat, was ground within six months. The lowest amount of wheat in the mill was about 1,500 bushels, of which 150 bushels was No. 2 wheat. After the fire a large quantity of wheat was taken out, for which eighty-five cents a bushel was offered for 1,500 to 1,800 bushels of the best; and the balance brought from thirty cents to thirty-five cents a bushel, except a lot which was sold for feed, by the load. William Reherd died in 1887, and William H. Rickard, his grandson, at Clem's instance, on February 4th, 1888, ascertained of S. H. Moffett & Co., dealers in wheat, that the worth of No. 2 wheat on that day was ninety-three cents a bushel, and that price was fixed for the wheat delivered. The receipt for the wheat delivered, dated June 4th, 1886, was found among the papers of William Reherd after his death, endorsed by him, "Amount of wheat in Clem & Wenger care, Harrisonburg, 701.57."

Clem & Wenger failing to pay for the wheat, this suit was brought by the administrator of William Reherd, deceased, to compel them to pay.

Upon the trial of the case, the defendants, Clem & Wenger, pleaded that they were not *purchasers* of the wheat, but were *bailees* thereof; and that, according to the contract, evidenced by the receipt given by them to William Reherd for the wheat they received, they held it in store for him when the mill was destroyed by fire December 23d, 1887, from the day of its delivery in their mill, June 4th, 1886, a period of over eighteen months.

The most important question presented in this case arises on the instruction asked for by the plaintiff and refused by the court, as follows : " If the jury believe from the evidence that William Reherd in his life time delivered the wheat which is the subject of controversy into the mill of the defendants, upon a contract with the defendants, that they, the defendants, should pay for the same in money at the market price whenever the

said William Reherd should name the time of the market price therefor, and that the defendants had the right to use said wheat as they thought proper, then such contract was a *sale* of the wheat and not a *bailment.*"

The court refused to give this instruction, and then gave the following instruction to the jury, at the request of the defendants, without construing the said receipt therein referred to and defining its legal import: "If the jury believe from the evidence that William Reherd, plaintiff's intestate, accepted and received the receipt signed Clem & Wenger, dated June 4th, 1886, as evidencing the terms and conditions on which he placed the wheat in controversy in Clem & Wenger's mill, said William Reherd is bound by the terms and conditions set forth in said paper, although he did not sign it."

The jury, after hearing the evidence introduced in the cause, rendered a verdict in favor of the plaintiff for $165, with interest thereon from February 4th, 1888; and thereupon the plaintiff moved the court to set the verdict aside as being against the law and the evidence, and to grant a new trial; which motion the court overruled and entered judgment upon the verdict. To this judgment the case is here upon a writ of error.

The verdict rendered by the jury cannot be sustained by either the law or the facts of the case as presented by the record.

The first assignment of error is as to the competency of Clem & Wenger, who, though parties to the contract with William Reherd, deceased, were permitted by the court to testify in the suit upon the contract against the objection of the plaintiff—that they were incompetent witnesses under sec. 3346 of the Code of 1887.

The pretension that William H. Rickard was the agent of William Reherd, deceased, the plaintiff's intestate, is not sustained by the evidence; but, on the contrary, Clem himself testifies "that he never had any conversation with W. H.

Rickard in regard to this wheat before it was put into the mill; after the wheat was in the mill a month or so, probably a week or so, William H. Rickard came to the mill with the several wagon receipts, and said that his grandfather wanted receipts for the wheat." Thereupon the receipt in controversy was drawn and delivered; and Wenger, Clem's co-defendant, says "he never knew about the wheat in controversy until after the fire." This being W. H. Rickard's only connection, that of a mere messenger for his grandfather, after all the wheat had been delivered into the mill, merely to exchange the several wagon receipts for the one consolidated receipt, he could not have been his grandfather's agent in the making of the contract under which the wheat was delivered. But, conceding the admissibility of the witnesses, Clem and Wenger, to testify as to such matters as occurred between them and Wm. H. Rickard, as agent of William Reherd, yet the testimony of both Clem and Wenger shows that, in spite of objection, they were permitted to testify to any and everything connected with the transaction, and that, though they expressly disconnect Wm. H. Rickard from any connection with the making of the contract in suit, they were allowed to answer questions and to testify as to material matters with which he had no possible connection whatever, and in which he did not participate; and as to which he had not been examined. The circuit court erred in allowing their testimony to go to the jury.

We are of opinion that it was error in the circuit court to refuse to give the instruction asked for by the plaintiff. The receipt in evidence in the suit is ambiguous, and is susceptible of explanation by the evidence which was before the jury as to the transaction between the parties in the making of the contract, and as to the conduct of the parties in acting under the contract after it had been made; and there being evidence already given to the jury not only tending to prove the case supposed in the instruction asked for, but fully and clearly proving it, the duty of the court was to instruct the jury that,

if they found from the evidence that the facts and conduct of
the parties showed that the wheat in controversy was delivered
into the mill under a contract with the defendants, that they
should pay for the same in money, at the market price, when-
ever William Reherd should name the time of the market
price therefor, and that the defendants had the right to use the
wheat as they thought proper, then such contract was a *sale* of
the wheat, and not a *bailment;* and the jury should have been
allowed to determine, from the whole evidence before them,
whether such was the contract between the parties. Had the
instruction asked for by the plaintiff been granted by the
court, the jury would have been left free to ascertain the
actual and essential contract between the parties, not only from
the language of the *ex parte* receipt, but from the evidence
adduced and the actual conduct of the parties under the con-
tract. But not only did the court refuse to give the instruction
asked for expounding the law applicable to the material evidence
in the cause, but it positively instructed the jury to confine
themselves to their own unaided construction of the ambigu-
ous receipt, prejudiced by the refusal of the court to define
and expound the law applicable to .the facts in evidence, and
confining them to the idea that the law of the case compelled
the finding of a *bailment* of the wheat, and not a *sale.* In Ben-
jamin on Sales, page 5, note I: "It is said to be a recognized
distinction between bailment and sale that where the identical
thing delivered is to be returned, though in an altered form,
the contract is one of bailment, and the title to the property is
not changed. Where there is no obligation to return the spe-
cific article, and the receiver is at liberty to return another
thing of equal value, he becomes debtor to make the return,
and the title to the property is changed—the transaction is a
sale." In *Powder Company* v. *Burkhart,* 97 U. S., 110—where
logs are delivered at a saw-mill, to be manufactured into
boards; or leather to a shoemaker, to be made into shoes;
rags into paper; olives into oil; grapes into wine; wheat into

flour—if the product of the identical articles delivered are to be returned to the original owner in a new form, it is said to be a bailment, and the title never vests in the manufacturer. If, on the other hand, the manufacturer is not bound to return the same wheat, or flour, or paper, but may deliver any other of equal value, it is said to be a sale or a loan, and the title to the thing delivered rests in the manufacturer. We understand this to be a correct exposition of the law. In the case of *Slaughter* v. *Green*, 1 Rand., 10, relied on by the appellees, the wheat was delivered at a mill to be ground, upon an agreement that the miller should return to the farmer a given quantity of flour for so many bushels of wheat. There is no evidence in this case that the wheat delivered by the plaintiff's intestate into the mill of the defendants was to be ground into flour and to be returned to William Reherd, either in kind or in identity. On the contrary, it is in evidence, by the defendant's own testimony, that they received the wheat and commingled it with their other wheat of that quality, ground it as their own, and sold the flour; and never, at any time between the delivery of the wheat (June 4th, 1886) and the destruction of the mill by fire (December 23d, 1887), a period of over eighteen months—made any tender of either the wheat itself, in kind, or of flour, to William Reherd; and even after the destruction of their mill by fire, they made no tender of any portion of the large quantity of wheat which was taken out of the burnt mill and sold by them as their own, nor of any part of the proceeds of sale. But the receipt itself shows that the delivery of the wheat into the mill of the defendants was upon a contract of sale, which carried with it a transmutation of property in the wheat from William Reherd to Clem & Wenger, leaving nothing ambulatory but the price to be paid by them—at market rates for wheat of that grade—whenever William Reherd should *fix the day*. Clem & Wenger claimed and exercised the right, under the contract, to use the wheat as their own, and they did so use it, and converted it

and sold its product and received the profits of its conversion. After using and enjoying the capital of this wheat, without interest, from June 4th, 1886, to February, 1888, they assert, that, because an accidental fire destroyed their mill and injured its contents, therefore Reherd must share in their misfortune in the ratio that 700 bushels of wheat bears to the amount of wheat in their mill at the time of the fire—some 5,000 or 6,000 bushels. The theory that the contract with Reherd was the storage or bailment of the wheat receipted for, without charge, is contradicted by the conduct of Clem & Wenger, both before and after the fire. They made no pretence that any portion of the wheat which was saved belonged to Reherd. They sold it and made no proffer of any portion of the proceeds to Reherd.

The circuit court erred in not granting the motion of the plaintiff for a new trial, and the verdict of the jury must be set aside, and a new trial ordered, and the judgment must be reversed and annulled.

LEWIS, P., dissented.

JUDGMENT REVERSED.