## PAUL HUTCHINSON *vs.* JOSEPH CLEARY.

Opinion. filed May 31st, 1893.

### Evidence of Transactions with Decedents.

Under § 5260, Comp. Laws, a party to an action is prohibited from testifying to a conversation with plaintiff's intestate, notwithstanding the fact that an agent of the decedent was present at the time the conversation took place.

### Parole Evidence Contradicting Written Contract.

Parol evidence *held* incompetent because it contradicted the terms of a written agreement between the parties; and the error in admitting the evidence *held* prejudicial because the court submitted to the jury a question of fact, as to which there was no controversy under the evidence, except on the theory that the jury had a right to base a finding upon such parol evidence.

### Suspension of Agents Power—Presence of Principal.

So long as the principal acts for himself in a matter, in the presence of his agent, the agent, as to such matter, does not represent the principal. His power is suspended for the time being.

Appeal from District Court, Foster County; *Rose,* J.

Action on a contract by Paul Hutchinson, administrator of the estate of Charles Hutchison, deceased, against Joseph Cleary and others. Defendants had judgment, and plaintiff appeals.

Reversed.

*E. W. Camp,* for appellant.

The court erred in admitting proof of the talk between defendant's and plaintiff's intestate. Because it was offered for the purpose of varying the terms of a written agreement. *Dean* v. *Bank,* 6 Dak. 222; *Hennessy* v. *Griggs,* 1 N. D. 52; *Fuel Co.* v. *Bruns,* 1 N. D. 137. It was also inadmissable under § 5260 Comp. Laws; *Taylor* v. *Bunker,* 36 N. W. Rep. 66; *Reherds Admr.* v. *Clem,* 10 S. E. Rep. 504; *Harris* v. *Bank,* 1 So. Rep, 140; *Brague* v. *Lord,* 67 N. Y. 495; *Heyne* v. *Doerfler,* 26 N. E. Rep. 1044; *Holcomb* v. *Holcomb,* 95 N. Y. 316; *Ebert* v. *Roth,* 24 At. Rep. 685.

*S. L. Glaspell,* for respondents.

Parol testimony was offered to show the understanding of the

parties of the meaning of the technical words used in the contract—towit: "custom work." There was no attempt made to change or vary the agreement, simply to ascertain what it was. *Chandler* v. *Thompson*, 30 Fed. Rep. 38–43. The admission of evidence objected to, if error was without prejudice. *Spencer* v. *Robbins*, 5 N. E. Rep. 726.

CORLISS, J. This suit was commenced by Charles Hutchinson. Before the trial he died. The action is continued in the name of the administrator of his estate. The deceased was a proprietor of a flour mill in South Dakota. To induce him to move his plant to New Rockford, N. D., the defendants entered into a written contract with him. This agreement, omitting the signature, was in the following words and figures: "This contract is entered into this thirteenth day of August, A. D. 1885, by and between Charles Hutchinson, of Oskaloosa, Iowa, on the first part, and Joseph Cleary, J. M. Patch, Frank A. Brown, E. E. Henderson, T. R. Palmer, Frank S. Dunham, John R. Winslow, H. M. Clark, John G. Frankland, *et al* of New Rockford, Eddy County, Dakota Territory, on the second part. And this contract witnesseth that said party of the first part agrees to bring to New Rockford, Eddy County, Dakota Territory, the machinery, engine, and boiler now in his mill at Mt. Vernon, Dakota Territory, and to add thereto new roller machinery, of the best pattern and workmanship, to constitute and complete a mill of seventy-five barrels capacity, and to erect the same at New Rockford, D. T., as quickly after the date hereof as practicable, and to operate the same as steam flouring mill, doing custom work at said place, for a period of five years from date hereof, unless prevented by inevitable necessity, or transfer of ownership, In consideration whereof the parties of the second part agree to provide and guaranty the following privileges: *First.* A deed for five acres of land contiguous to James river, with a right of way for a spur track from the Northern Pacific R. R. track, as a site for said mill; said deed to be given on arrival of lumber on the ground. *Second.* Nine cords of building rock for the foundation

of the mill, to be deposited on the site at once, on execution hereof. *Third.* Free transportatation for four car loads of lumber from Minneapolis, and two car loads of machinery from Fargo. *Fourth.* The sum of five hundred dollars, to be paid in cash on arrival of lumber on the ground. *Fifth.* A deed for town property of present value of one thousand dollars, when the mill is completed and running. *Sixth.* Subscriptions of wheat and cash of the value of one thousand dollars, to be paid by November 1st, 1885, if mill is completed and running by that time; and if not, as soon as it is completed and running. *Seventh.* It is hereby agreed and understood between the parties that any or all of the cash subscriptions in this section above mentioned may be paid in carpenter and other work in the construction of said mill, at the usual wages for such labor, provided such labor is needed by, and can be rendered satisfactorily to, said Charles Hutchinson or his agent; but the first five hundred dollars subscription specified in fourth section shall, as therein stated, be paid in cash, on the arrival of lumber on the ground. And it is further understood and agreed between contracting parties that said Charles Hutchinson shall not sell or transfer ownership of said mill without causing the new proprietor to assume all liabilities under this contract and especially the one to operate the mill as a custom mill for five years from the date hereof, at said town of New Rockford, D. T., and that when such new proprietor shall thus assume this contract the said Charles Hutchinson shall be fully released therefrom. Witness our hands this thirteenth day of August, A. D. 1885." The action was brought to recover the balance due under this agreement, the plaintiff averring that he had performed all the conditions on his part which are conditions precedent to a recovery. It is undisputed that the defendants had performed the 1st, 2d, 3d, and 4th conditions of the agreement, and that they had partially performed the 5th and 6th conditions. It is to recover the balance due under these two conditions that the action was brought. It was claimed that the town property deeded to plaintiff's intestate was of the value of

only $500 instead of $1,000, and, instead of securing subscriptions of wheat and cash of the value $1,000, they had furnished such subscriptions of the value of $200 only. The defendants allege that plaintiff failed to perform his part of the agreement, in several particulars, and seek to recover back the money paid him.

The conclusion we have reached makes it necessary for us to refer to only one of these matters. The contract provides that plaintiff is to operate this mill as a steam flouring mill, doing custom work. The defendants aver plaintiff had not, up to the time the answer was interposed, operated a custom flour mill at New Rockford. The mill which plaintiff was to operate was a roller mill. It is undisputed that the words "custom work," when used with reference to such a mill, have a meaning different from that which attaches to them, as applied to the old fashioned grist mill. One of the witnesses who was sworn on this point said that "a custom mill is a mill that takes in farmer's grain, and grinds it, for a certain amount of toll. A roller mill gives the farmer back the equivalent of the flour from his own grain. The small old fashioned mill grinds the farmer's grain. The large mill, even if it is stone mill, exchanges. The meaning of 'custom work,' as applied to roller mill, is that the farmer gets a certain amount of flour, bran, and shorts for a given number of bushels of wheat. A roller mill gives the equivalent, instead of the flour, from the identical grain. A roller mill gives the equivalent, instead of the flour from the same grain, because there are too many machines for the different products of grain. The mill is too complicated." It was undisputed that, in the operation of this mill, custom work was done, according to the significance of these words as applied to a roller mill. There was therefore nothing to submit to the jury on this point; and yet the court, after stating to the jury the fact that the defendants had put in issue the fact whether custom work was done by the mill, submitted to the jury the question whether the mill was operated as a custom mill. To this portion of the charge the plaintiff

excepted. This action of the court renders it impossible for us to determine whether the jury did not decide against the plaintiff upon the strength of certain incompetent testimony, to which we will now refer. E. E. Henderson, one of the defendants, was asked to testify to a conversation which took place between himself and the deceased, in his lifetime, prior to the time when the written contract was executed. The question was objected to as incompetent under § 5260, Comp. Laws, and as generally incompetent and immaterial. The answer was as follows: "Mr. Hutchinson said he would build a roller mill at New Rockford under certain conditions. We asked what a roller mill was, and it was defined, to some extent, by Mr. Hutchinson. His definition was a machinery mill for exchange, and grinding flour for sale. Our reply was, we wanted a mill for the benefit of the farmers, where we could take our own wheat, and get it ground, and get our flour from our own wheat; and we said: 'We will have that, if we put our money into it. We will have the kind of mill we want.'" This evidence was immaterial, except as it tended to throw light upon the agreement between the parties; and it was incompetent for that purpose, as it was directly contrary to the terms of the written contract subsequently entered into. Under the written contract, plaintiff agreed, not to give the defendants a grist mill, but a custom mill, according to the meaning of the word "custom," when applied to a roller mill, i. e. a mill where an equivalent in flour, etc., is given for wheat. It was improper to allow the jury to hear evidence contradicting the contract the parties had made; and it was error to submit to them the issue whether the mill was operated as a custom mill, when there was no such issue before the jury, under the evidence, except on the theory that this incompetent evidence created such an issue, and the jury had a right to consider it, and even to base a finding upon it, directly against the clear and explicit terms of the written agreement. It is by no means certain that the jury did not find against the plaintiff upon the sole ground that the mill was not operated as a custom mill, and when it is undisputed that it is was so operated.

The evidence of the witness Henderson was incompetent, also, under § 5260, Comp. Laws: "In civil actions or proceedings by or against executors, administrators, heirs at law, or next of kin, in which judgment may be rendered or order entered for or against them, neither party shall be allowed to testify against the other as to any transaction whatever with, or statement by, the testator or intestate, unless called to testify thereto by the opposite party. But if the testimony of a party to the action or proceeding has been taken, and he shall afterwards die, and after his death the testimony so taken shall be used upon any trial or hearing in behalf of his executors, administrators, heirs at law or next of kin, then the other party shall be a competent witness as to any and all matters to which the testimony so taken relates." The defendants endeavor to escape the force of the statute by the assertion that, the agent of the deceased being present at the time the conversation took place, the case does not fall within the spirit of the law. We find no such exception in the act itself, nor do we agree with counsel for defendants that such a circumstance takes the case without the spirit of the law. The theory and philosophy of the act are that one party to a conversation or transaction shall not secure an undue advantage in proving what took place because the lips of the other party are sealed by death. If a third person was present, the surviving party to the conversation or transaction can call him as a witness The authorities are numerous in support of the doctrine that the presence of a third person at the conversation does not render the surviving party a competent witness against the representatives of the deceased, under statutes similar to ours. *Taylor* v. *Bunker*, (Mich.) 36 N. W. Rep. 66; *Heyne* v. *Doerfler*, (N. Y. App.) 26 N. E. Rep. 1044; *Holcomb* v. *Holcomb*, 95 N. Y. 316; *Harris* v. *Bank*, (Fla.) 1 So. Rep. 140. See, also, *Ebert* v. *Roth*, (Pa. Sup.) 24 At. Rep. 685; *Reherd's Adm'r* v. *Clem*, (Va.) 10 S. E. Rep. 504. . Nor can we see why the principle should be any different where the agent of the deceased is present at the conversation. No case has been cited which holds that such a fact makes any difference;

and, even if such a distinction could be made, it would not control this case, for the person present at the talk between Henderson and the deceased, conceding him to have been the agent for the deceased in the transactions connected with the matters discussed, could not be agent for his principal, and act for him, in a transaction, when the principal himself was present, and carrying on the negotiations, and conducting the business. The case is therefore assimilated to a case where a third person is present, and under such circumstances the decisions are unanimous that the evidence of the surviving party to the conversation or transaction is incompetent. Of course, if the talk had been had with the agent alone, it would not have been a conversation with the deceased, and therefore the case would not have fallen within the statute. But no such question is presented on this appeal. For the errors to which we have referred, the order and judgment are reversed, and a new trial is ordered. All concur.