CHARLES G. LARSON v. FRANK NEWMAN, ADMINISTRATOR, ETC.

Opinion filed March 13, 1909.

### Brokers — Termination of Authority — Dissolution of Partnership.

1. A landowner made a contrace in writing with S. & Co., land agents, authorizing them to sell a piece of land on terms stated in the contract. Afterwards the firm of S. & Co. dissolved. S., continuing the business, made a contract to sell the land to plaintiff on terms somewhat different from those authorized in the agency contract, and signed the landowner's name thereto by himself as agent. In an action to compel the land owner to specifically perform the

contract, *held* that whatever authority was conferred upon S. & Co., by the agency contract was terminated upon the dissolution of the co-partnership, and S. had no further power under the contract.

### Brokers — Unauthorized Sale.

2. The sale by an agent on any other terms and conditions than those authorized by the principal is not binding on the latter.

### Brokers — Sale — Ratification.

3. Evidence insufficient to show a ratification by the principal of the contract of sale by S. to plaintiff.

### Witnesses—Transaction with Decedent.

4. Under Rev. Codes 1905, section 7252, forbidding a party to an action against the heirs or representative of a decedent to testify to conversations or transactions with decedent; testimony by plaintiff, in an action to specifically enforce an alleged contract of sale of land with a decedent, that decedent promised to go to a certain town the next day, and fix up the deal on the terms of the contract of sale. was inadmissible.

Appeal from District Court, Ward county; *Goss, J.*

Action by Charles G. Larson against Frank Newman, administrator of the estate of George J. Newman, and another. Judgment for defendants, and plaintiff appeals.

Modified, and as modified, affirmed.

*Johnson & Nestos* and *Skulason & Burtness,* for appellant.

*Palda & Burke (Engerud, Holt & Frame,* of counsel), for respondents.

CARMODY, J. The plaintiff in this action seeks to compel the defendant to specifically perform a certain written contract, alleged to have been duly subscribed and executed by the plaintiff, and duly subscribed and executed on the part of the defendant by one C. Sangalli thereunto, duly authorized by an instrument in writing, theretofore duly executed and subscribed by the defendant, by the terms of which the defendant agreed to sell and convey to the plaintiff certain real estate consisting of 160 acres in Ward county. At the time of trial there was another action pending relative to the land in controversy, in which defendant George J. Newman was plaintiff, and Sangalli and plaintiff, Larson, were defendants. They stipulated that the rights of the parties to said action would be determined by the judgment in the case at bar. The

trial court made findings, and entered judgment dismissing this action, cancelling the contract alleged to have been entered into, and awarding the respondents possession of the real estate in controversy, and ordered $100 attorney fees to be taxed in favor of the respondents and against the plaintiff. Plaintiff appealed from the judgment, and demands a review of the entire case in this court. The facts which are material to the determination of the questions involved are as follows: On August 24, 1904, the defendant, who was then, and his heir at law now is, the owner of the real estate in question, listed the same for sale with the firm of C. Sangalli & Co., consisting of three members, real estate agents at Berthold. The listing contract is as follows: "Agent's Authority to Sell Land. Berthold, N. Dak., August 24, 1904. I hereby constitute and appoint C. Sangalli & Co., of Berthold, N. D., my exclusive agent to sell the following described lands: The northwest quarter of section 2 in township No. 155 of range No. 86, county of Ward, state of N. Dak. My net price to you on this land is $1,700.00. I want $1,200.00 paid down and will allow the balance to be paid in balance mtge. to be assumed by purchaser annual payments, with interest at the rate of — per cent per annum and I hereby agree to pay you a commission of ——— of said net price and in case of sale to furnish at my own expense a complete abstract of title and to convey the above-described premises by a good and sufficient deed or deeds of conveyance. Notify me if you get offer of $1,600.00. Gen'l Delivery, Chicago, Ills. 86 acres broken. This authority to remain in force for the period of 2 months from date and to continue in force thereafter until I shall have served 15 days' notice of cancellation upon C. Sangalli & Co., my herein constituted agent. George J. Newman. Mtge. $500.00, 10 per cent. Due 8-20-08."

Immediately after making the agency contract, defendant left the state, and his residence was unknown to Sangalli & Co., until about July 1, 1906, when Sangalli received a letter from him, asking if he had any chance to sell the land, how crops were looking, etc., giving his address as New York City. In the meantime, and before the contract in question for the sale of the land was entered into, the firm of Sangalli & Co. was dissolved, and the business was continued by C. Sangalli, which dissolution was unknown to defendant. On the 31st day of August, 1905, and after the dissolution of the firm of C. Sangalli & Co., C. Sangalli, claim-

ing under said contract to be the agent of defendant, entered into a contract with plaintiff, as follows: .

"Earnest Money Contract of Sale.

"Berthold, N. Dak., August 31, 1905.

"Received of Charles G. Larson one hundred dollars ($100.00) as earnest money, and in part payment for the purchase of the following described property situated in the county of Ward and state of North Dakota, viz.: The northwest quarter of section No. two (N. W. ¼ sec. 2), in township one hundred and fifty-five (155) north, of range eighty-six (86) west. Containing one hundred and sixty (160) acres more or less according to the United States government survey thereof. Which I as duly authorized agent of George J. Newman, the owner of the above-described real estate, sold and agreed to convey to said Charles G. Larson for the sum of one thousand and eight hundred dollars ($1,800.00) on terms as follows, viz.: One hundred dollars ($100.00) in hand paid as above and $1,200.00 November 30, 1905; $500.00 mortgage to be assumed by the purchaser, payable on or before the dates as named above or as soon thereafter as a warranty deed conveying a good title to said land is tendered, time being considered of the essence of this contract. And it is agreed that if the title to said premises is not good and cannot be made good within one year from date hereof, this agreement shall be void, and the above one hundred dollars ($100.00) refunded. But if the title to said premises is now good, in his name, or can be made good within one year, and said purchaser refuses to accept the same, said one hundred dollars ($100.00) shall be forfeited to the said C. Sangalli. But it is agreed and understood by all parties to this agreement that said forfeiture shall in no way affect the rights of either party to enforce the specific performance of this contract.

"George P. Newman,
"By C. Sangalli, Agent.   (Seal.)

"I hereby agree to purchase the said property for the price and upon the terms above mentioned and also agree to the conditions of forfeiture and all other conditions therein expressed.

"Charles G. Larson.   [Seal.]

"....... the undersigned, owner of the above-described land, do hereby ratify the above sale and agreement.

"............. [Seal.]"

On receipt by Mr. Sangalli of the letter hereinbefore mentioned

he sent defendant a copy of the contract of sale, and also a deed for his signature, to which he replied as follows:

"New York, July 21, 1906.

"Friend Charles: In the earnest money contract it says 190' payable on or before the dates as named above, etc. Now, I don't know what that 190' is or what it is for. I had a notary public look at it and he did not understand it. He told me to write and have it explained. Now Charles, I have almost entirely forgotten the conditions of the contract I made with you; I did not think when I made it that you would find a buyer and now it is almost two years ago and the land certainly went up a little in that time. Now Charles, between you and me and the fence post, don't you think we could make Larson come up a little more on the price; he wants the land because it is handy to Parker. Sound him and tell me what you think of it. Now tell me what your commission is, and who pays it, Larson or I. Tell me if Larson is on the place this year. Let me know what taxes I had to pay last year, and if Stevenson has paid my interest to the Second National Bank of Minot. Now Charles, that is asking a good deal of you but I hope you will do it. Remember your commission will be all right. If there is not any other land handy he will come up. All right.

"Now, Charles, this is between you and me only. I wrote to Stevenson last summer; it looks funny he could not tell you my address. Now you know how land is selling better than I do. If you work for my best interest I will be thankful and a little more.

"Yours very truly,                    Geo. J. Newman.

"Address as before."

At the time of the alleged sale the land in question was rented for a term which would expire about November 1, 1906. Plaintiff made no payment, and took no possession of said premises until the fall of 1906, when he put some grain into a granary on the premises. After the commencement of this action a stipulation was entered into between plaintiff and defendant by the terms of which the plaintiff was to farm the land during the season of 1907 without it interfering with the rights of any of the parties to this action. On or about the 1st day of October, 1906, defendant returned to Berthold, when Sangalli and the plaintiff requested him to execute a deed for the land, which he failed and refused to do. The plaintiff then deposited $1,200 in a bank at

Berhold, with instructions to turn it over to defendant upon his executing a sufficient deed of warranty conveying to plaintiff the said land. He also notified defendant in writing of the deposit. After the commencement of this action defendant died, and upon the trial his administrator, Frank Newman, and his sole heir, Ann Newman, were by stipulation substituted as parties defendant.

Is the contract of sale herein mentioned defendant's contract? It was not signed by him in person. Plaintiff contends that Sangalli had authority, under the written agency contract, to sell, and make an executory contract binding upon defendant, and further claims that he, by his letters to Sangalli dated June 29, and July 21, 1906, and by other actions, ratified the contract of sale made for him by Sangalli to plaintiff. On the other hand, respondent contends that said contract of agency only conferred upon Sangalli & Co. the authority ordinarily possessed by real estate brokers, and that it did not empower them to make a written contract which would bind defendant; that even if it did create an agency to sell and contract in defendant's name, the contract executed by Sangalli is not binding on defendant for whatever power the agency contract conferred was in Sangalli & Co., which was a copartnership composed of three members, and was dissolved before the sale contract herein mentioned was executed between Sangalli and plaintiff, and, further, that the terms of sale stated in the agency contract were $1,200 cash and the assumption of a $500 mortgage, which was then on the premises; while the contract entered into between Sangalli and plaintiff was for $100 cash and $1,200 payable on the 1st day of November, 1905, which was three months after the contract was made; the plaintiff to assume the $500 mortgage. Appellant cites a large number of cases to sustain his contention that Sangalli, under the agency contract hereinbefore mentioned, had power to execute the contract of sale, and that it was valid and binding upon defendant. Under our view of the case it is not necessary to pass upon this contention, as we are agreed that whatever authority was conferred upon Sangalli & Co. by the agency contract was terminated upon the dissolution of the copartnership, and Sangalli had no further power under that contract. Martine v. Life Ins. Society, 53 N. Y. 339, 13 Am. Rep. 529; Johnson v. Wilcox, 25 Ind. 182. The sale contract was unauthorized, void, and not binding upon the defendant for the reason that the terms of sale therein set forth were

materially different from those required by the agency contract, in that the agency contract required the $1,200 to be paid in cash, while the sale contract gave three months' time for the payment of said sum. It also contains some provisions regarding title to the land, the forfeiture of $100 to Sangalli in case the plaintiff refused to accept same, and some other provisions not contained in the agency contract. The sale by an agent on any other terms and conditions than those authorized by the principal is not binding on the latter. De Sollar v Hanscome, 158 U. S. 216, 15 Sup. Ct. Rep. 816, 39 L. Ed. 956; Holbrook v. McCarthy, 61 Cal. 216; Speer v. Craig, 16 Colo. 478, 27 Pac. 891; Taylor v. White, 44 Iowa, 295; Veeder v. McMurray (Iowa) 23 N. W. 285; Siebold v. Davis, 67 Iowa, 560, 25 N. W. 778; Dayton v. Buford, 18 Minn. 126 (Gil. 111); Jackson v. Badger, 35 Minn 52, 26 N. W. 908; Nat. Iron Armor Co.· v. Bruner, 19 N. J. Eq. 331. And, unless defendant ratified the contract of sale entered into between Sangalli and the plaintiff, the judgment of the district court must be affirmed, except as to attorney fees of $100.

Appellant contends that the defendant Newman ratified the contract of sale by his letters to Sangalli dated June 29, and July 21, 1906, hereinbefore referred to, and also by his conversation and conduct after his return to Berthold in the fall of 1906. The letter written to Sangalli by defendant on June 29, 1906, only refers to the land as follows: "Let me know if you had any chance to sell that land and how crops are looking and all the news in general." In answer to this letter Sangalli sent him a copy of the contract of sale, and also deed for his signature. In reply thereto defendant wrote the letter in which he stated that he had received the earnest money contract, part of it he did not understand, and had a notary public look at it who did not understand it, and asked him to write and have it explained. And then goes on to say "Now Charles I have almost entirely forgotten the conditions of the contract I made with you. I did not think when I made it that you would find a buyer and now it is almost two years ago, and the land certainly went up a little in that time. Now Charles, between you and me and the fence post, don't you think we could make Larson come up a little more on the price; he wants the land because it is handy to Parker. Sound him and tell me what you think of it. Now tell me what your commission is, and who pays it, Larson or I. Tell me if Larson is on the place this year.

Let me know what taxes I had to pay last year, and if Stevenson has paid my interest to the Second National Bank of Minot. Now Charles, that is asking a good deal of you, but I hope you will do it. Remember your commission will be all right. Now, Charles, this is between you and me only." This letter, which is the one principally relied upon by appellant, is in our opinion far from a ratification of the sale contract. It does not state that he will consummate the sale, or that he is satisfied with it, or that Sangalli was authorized to make it; neither did he execute the deed sent him by Sangalli. On his return to Berthold in the fall of 1906 he repudiated the contract and refused to carry out its terms. True, plaintiff testified that, in a conversation he had with Newman after his return to Berthold, he promised to go to Minot the next day and fix up the deal on the terms of the sale contract. This testimony was seasonably objected to by respondents, and was inadmissible under the statute, which deprives a party to an action against the heirs or representatives of a deceased to testify as to conversations or transactions had with the said deceased. Section 7252, Rev. Codes 1905; Hutchinson v. Cleary, 3 N. D. 270, 55 N. W. 729; Regan v. Jones, 14 N. D. 591, 105 N. W. 613. The trial court allowed attorney fees at $100. This was error, and that amount must be deducted from the costs taxed in the district court, and the judgment modified to that extent.

The judgment as modified is affirmed. All concur.