HOMER H. NORTHUP ET AL., APPELLEES, V. EDWARD W.
BATHRICK, APPELLANT.

FILED NOVEMBER 9, 1907. No. 14,963.

1. Pleading: VERIFICATION. The verification of a pleading is not juris-
dictional, and the failure to verify is waived unless objection is
made before trial.

2. Estoppel: PRINCIPAL AND AGENT. By correspondence, plaintiffs, who
are real estate brokers, arranged with a landowner for a sale of
his land to a stranger, and during the negotiation demanded a
certain sum as their commission, which, upon consummation of
the sale, was paid to them. *Held,* That the plaintiffs will not
be heard to say that they were not the agents of the vendor.

3. Replevin: DEFENSES. A replevin action against a tenant for the
possession of grain due from him as rent may be defeated by a
showing that the title and right to possession is in a third
person.

4. Principal and Agent. An agent, having authority to sell both real
and personal property for a certain sum, cannot, without the
consent of his principal, take over to himself the personal prop-
erty upon receiving the authorized sum for the real estate.

APPEAL from the district court for Furnas county:
ROBERT C. ORR, JUDGE. *Reversed.*

*W. S. Morlan,* for appellant.

*John Stevens, Jr., contra.*

EPPERSON, C.

Plaintiffs, Northup and Renie, were successful in the
lower court in this an action of replevin to recover from
defendant, Bathrick, about 800 bushels of wheat, and the
latter appeals.

In 1905 plaintiffs were engaged in the real estate busi-
ness at Arapahoe, Nebraska. J. W. Tomblin, a nonresi-
dent of this state, owned a farm of 320 acres a few miles
from that village. The defendant occupied it as tenant,

giving $50 and one-third of the crop as rent. May 2, 1905, plaintiffs sent Tomblin the following telegram: "What is your best price on half-section north of Arapahoe? Can get you thirty per acre. Answer." Tomblin replied: "Sell thirty-five per acre including crops. Half on time at seven if desired." Plaintiffs sold the land, and on May 25 wired Tomblin: "We have sold your farm at thirty-five. Will write you fully." Plaintiffs thereupon wrote Tomblin explaining the terms of sale. The price received was $35 an acre and the crop, the purchaser paying $6,200 in cash, and giving a mortgage for the remainder. The letter instructed Tomblin to send deed, abstract, and assignment of the lease either to the plaintiffs or to the First National Bank of Arapahoe. The name of the grantee was to be inserted in the deed later, and the assignment of the lease was to be in blank. In the event the papers were forwarded to the bank, the bank was to be directed to turn over $305 to the plaintiffs as commission when the deal was closed. May 31 Tomblin forwarded the deed, the abstract, and the assignment of the lease, with a letter containing, among other things, the following: "When sale is consummated you can pay Northup and Reinie $305. Com." This sum was paid to plaintiffs, and it was understood by all parties that $305 was the usual commission and that plaintiffs were entitled to the same. When the deal was finally closed, the name of the purchaser, Robert Goethe, was inserted as grantee in the deed, and the names of plaintiffs were inserted as assignees of the lease. When Tomblin became aware of the fact that the purchaser of the land was not to receive the benefits accruing under the lease, but that all benefits were to go to his agents, the plaintiffs herein, he instructed the defendant, his tenant under the lease, not to turn over the rent to the plaintiffs, and, upon defendant's refusal to deliver one-third of the wheat, plaintiffs brought this action, with the result as hereinbefore stated.

1. It is argued by plaintiffs that the judgment should

be affirmed for the reason that defendant failed to verify his answer. The failure to verify the pleading did not oust the court of jurisdiction. *Johnson v. Jones,* 2 Neb. 126; *Dorrington v. Meyer,* 8 Neb. 211. Besides, this objection to the answer was not raised before trial, and cannot now be considered. *Schwarz v. Oppold,* 74 N. Y. 307.

2. After sending the telegrams and letters preserved in the record, and receiving and acting upon Tomblin's answers thereto, and accepting the sum requested and obtained by plaintiffs from Tomblin as commission, plaintiffs will not be heard to say that there was no contract of agency. See *Quertermous v. Taylor,* 62 Ark. 598, 37 S. W. 229.

3. Neither can it be claimed that defendant should be required to surrender the property to plaintiffs because his landlord (Tomblin) did not intervene and establish his right to possession. The rule is well established that in replevin the plaintiff must rely upon the strength of his own title, and cannot rely upon the weakness or lack of title of his adversary. *St. John v. Swanback,* 39 Neb. 841; *Johannson v. Miller,* 45 Neb. 53; *Herman v. Kneipp,* 59 Neb. 208. Defendant was in possession of the wheat as tenant of Tomblin, and it was competent for him to challenge the plaintiffs' title and defeat it by showing title and the right of possession in a third person. *Sutro v. Hoile,* 2 Neb. 186; *Fuller v. Brownell,* 48 Neb. 145.

4. Defendant seeks a reversal for the reason that the judgment is not supported by the evidence; that the evidence shows that plaintiffs did not in fact make a sale of the crops, but, under a pretense to him that the crops were sold or the rents assigned, attempted to appropriate the same to their own use. No rule is better settled than that an agent is required to disclose to his principal all the information he has touching the subject matter of the agency, and that his relation to his principal forbids his becoming a purchaser thereof for his own benefit, in any way, without the full knowledge of the principal of this fact. *Jansen v. Williams,* 36 Neb. 869, and cases there

reviewed and approved.  In *Rockford Watch Co. v. Manifold,* 36 Neb. 801, Mr. Commissioner IRVINE said: "The evidence does not disclose any fraud or even unfairness in his (the agent's) conduct, but such transactions upon the part of an agent are voidable at the option of the principal without regard to the existence of actual fraud. They are voidable, not because there *was* fraud, but because there *might be,* and because the law, upon grounds of public policy, will not permit an agent to assume a position where conflicting interests will expose him to the danger of sacrificing his principal to himself.  The doctrine extends to all cases of agency with almost the same force as to cases of trusts, and has been applied in every adjudicated case, so far as we are aware, to agents for the purpose of selling goods or land.  It has been held to apply to public sales as well as private, and even to an agent empowered to sell at a stipulated price.  The principle is well stated in Pomeroy's Equity Jurisprudence (2d ed.), sec. 959, where a vast number of authorities are collated."  Mr. A. C. Freeman has annotated this question in the American State Reports.  See authorities collected in his excellent note to *Kimball v. Ranney,* 80 Am. St. Rep. 549 (122 Mich. 160).  The reasons for the doctrine are stated by RYAN, C., in *Jansen v. Williams, supra,* and repetition here is unnecessary.  Under the rule established by the authorities, we are clearly of the opinion that plaintiffs in the case before us should not have taken the assignment of the lease without their principal's knowledge or consent, nor claimed title to the crop which their principal supposed he was selling to his grantee.  In fact the crop never was sold, and, when the principal became aware of the true situation, he was entitled to disregard the apparent assignment and retain control of the property, and plaintiffs were not justified in attempting to dispossess his tenant.  In will best serve "the general interests of justice and the safety of those who are compelled to repose confidence in others" to adhere strictly to the rule of the authorities above cited;

for, "if such a transaction as is exhibited by the undisputed facts of this case could stand for a moment, the well-established rules that an agent to sell cannot himself become a purchaser, and that one who undertakes to act for another in any matter shall not in the same matter act for himself, would be so easy of evasion, and breaches of them so readily covered up by contrivances, that they would cease to be of any practical value. When agents, and others acting in a fiduciary capacity, understand that these rules will be rigidly enforced, even without proof of actual fraud, the honest will keep clear of all dealings falling within their prohibition, and those dishonestly inclined will conclude that it is useless to exercise their wits in contrivances to evade it. Thus only can these rules be made useful in promoting fair dealing on the part of agents and trustees, and in preventing frauds." Rapallo, J., in *Bain v. Brown*, 56 N. Y. 285. The reasons for the rule apply with greater force to the case at bar. The agents here parted with nothing of value, but attempted to acquire title without paying any consideration whatever to their principal.

Plaintiffs attempt to justify their conduct in this way: They claim that Tomblin parted with his title to the land and to the crop to Goethe, the purchaser, and that they acquired title to the crop from Goethe for a valuable consideration. This contention is not sustained by the evidence. There is nothing in the record tending to show that the purchaser acquired the assignment of the lease and then transferred his interest therein to the plaintiffs. It is undisputed that the lease was assigned in blank and plaintiffs' name inserted without the knowledge or consent of Tomblin, their principal, and that the purchaser never knew that the crops were offered with the land, or that Tomblin intended to sell the crops or assign his lease. The claim of plaintiffs rests upon indefensible grounds and cannot be sustained.

The judgment of the district court should be reversed

and the cause remanded for further proceedings, and we so recommend.

DUFFIE and GOOD, CC., concur.

By the Court: For the reasons stated in the foregoing opinion, the judgment of the district court is reversed and the cause remanded for a new trial.

REVERSED.