## CHARLES BREADY v. EMIL MOODY.

(164 N. W. 946.)

**Agent — commissions for selling land — action to recover — must tender a purchaser — terms and conditions — compliance with — ready — willing and able.**

In order that an agent may recover commissions for selling land, he must tender a purchaser having ability and being ready and willing to pay for the same upon the terms and conditions under which the land was listed and the agent was authorized to sell.

Opinion filed October 16, 1917.

Action for commission on sale of land.

Note.—The general rule that a real estate broker, to be entitled to commissions, must find a purchaser able, willing, and ready to purchase on terms prescribed in the contract between the principal and such broker, is applicable if the owner refuses to consummate the sale, even though the only deviation from the broker's authority is the stipulation in regard to the cash payment, or length of time given to make the various payments, as will be seen by an examination of the cases discussed in note in 21 L.R.A.(N.S.) 935, on the right of a broker to commissions where he procures a purchaser at the price stated by his principal, but on slightly different terms in regard to cash or time of payment, and the owner refuses to consummate the sale. How much more is this true when, as in the case above, the contract was not in any substantial sense in compliance with the terms and conditions of the broker's authority to sell.

38 N. D.—21.

Appeal from the District Court of Renville County, Honorable *K. E. Leighton*, Judge.

Judgment for defendant.

Plaintiff appeals.

Affirmed.

*J. E. Bryans* and *E. R. Sinkler*, for appellant.

The purchaser tendered by appellant was ready, willing, and able to buy the land on the terms and conditions of the sale authorized, and therefore appellant is entitled to recover his commissions. Elwood Emerson Land Co. v. Bleasdela, — Iowa, —, 139 N. W. 554; Ketcham v. Axelson, 160 Iowa, 456, 142 N. W. 62.

"The test of the agent's right to a commission for finding a purchaser is not whether his agreement with the purchaser is specifically enforceable, but whether he has found a purchaser able, ready, and willing to take the property on the terms prescribed by the principal." McLaughlin v. Wheeler, 1 S. D. 497, 47 N. W. 816; McDonald v. Smith, 99 Minn. 42, 108 N. W. 291; Northern Immigration Asso. v. Alger, 27 N. D. 467, 147 N. W. 100; Jones v. Buck, — Iowa, —, 120 N. W. 112; Sullivan v. Milliken, 51 C. C. A. 79, 113 Fed. 93; Chaffee v. Widman, 139 Am. St. Rep. 225, note.

*Flynn & Traynor*, for respondent.

A real estate agent has authority to effect a purchase or sale only at the price and on the terms and conditions fixed by the principal, and he has no authority to change any of the terms imposed by the principal, such as the price, time of payment, or rate of interest, or any other material condition. 9 C. J. 525, 595, and 603; Ballou v. Bergvendsen, 9 N. D. 285, 83 N. W. 10; Grangaard v. Betzina, 33 N. D. 267, 156 N. W. 1035; Speer v. Craig, 16 Colo. 478, 27 Pac. 891; Balkema v. Searle, 116 Iowa, 374, 89 N. W. 1087; Fairchild v. Cunningham, 84 Minn. 521, 88 N. W. 15; Schultz v. Griffin, 121 N. Y. 294, 18 Am. St. Rep. 825, 24 N. E. 480.

The broker cannot sell the land to himself without consent of his principal. Chezum v. Kreighbaum, 4 Wash. 680, 30 Pac. 1098, 32 Pac. 109; Tate v. Aitken, 5 Cal. App. 505, 90 Pac. 836; Northup v. Bathrick, 80 Neb. 36, 113 N. W. 808.

BRUCE, Ch. J. The controversy in this case is over the commission

for selling a piece of land on the 8th day of March, 1915. The defendant, Moody, gave to the plaintiff a written list containing the following provision:

"I hereby grant to Charles Bready, of Mohall, North Dakota, the exclusive sale of said property for a period of eight months from the date hereof, and thereafter, until I shall revoke the same by a notice in writing, for seven thousand dollars ($7,000), land and crop on the following terms, viz.:

"Five hundred dollars cash, and the balance in crop contract, all payments payable in five years from date of sale, and in case of the sale of said premises I agree to pay to Charles Bready a commission of all over my price besides any sum said land shall sell for in excess of my price as is named above; said commission to be paid in cash, and to be deducted from the first money paid by the purchaser of said property."

On the 2d day of October, 1915, no sale having yet been made, the plaintiff wrote to the defendant as follows:

"I have been making an extra effort to sell your land for you, and taken it up with eastern parties, who are bringing men here. One of these parties had a man here last week, during the rainy, disagreeable weather; and I was unable to close with him, for the reason that it was practically impossible to drive, and conditions were not right. Now, if I can succeed in making a deal, it will be necessary to sell for quite a little above your price, as I will have to pay two different agents commissions, and I believe it will be possible to sell your land and make these different fellows wait until you have your pay out of the land before they get anything. This party coming from Minnesota would be in good shape in the way of having stock and horses, and would agree to dig the stone and break 100 acres this coming spring, would fix all of the buildings in the way of painting them, and put on other little improvements and make the place worth quite a little more than it is at present. They are not in the habit of paying over 6 per cent, but this party I could probably arrange so that he could start his interest from December 1st, or thereabouts, and that would be much better than a higher rate beginning the interest in the spring. If terms of this kind would be agreeable to you, we could likely get you net to you, $7,000, and draw the papers in such a way that the party moving on this place would have to make these improvements and

put in all his crop. His contract would then terminate on the 16th day of July, next year, in event of him failing to live up to his contract in the way of improving and breaking. Now, while this party would not make any payment, I am personally acquainted with the party, and feel that a contract with him without a payment would be much better than a small payment from the average man, because I am thoroughly convinced, if I am able to close a contract at all, that he is the kind of a farmer that would pay out on this land in a very short time.

"Now, Mr. Moody, you can rest assured that, if I was not thoroughly convinced that this party would pay out, I would not ask you to make this deal, for the reason that I am bound to be under quite a little expense, and will necessarily have to see your deal through and complete, as *I would figure in drawing the papers, you should get all of your money first.* If I get hold of this party again, I will try and draw a contract with him, which of course will be subject to your approval, but it will be along the lines mentioned. If for any reason you do not think it would be a good contract for you, you had better let me know by return mail, as I have already been to some little expense, and I cannot make him do any better. I will see to it that, in drawing the contract, that within a very few years your whole place will be under cultivation and it would then be a nice farm."

In reply to this letter, and on October 9th, the defendant wrote the plaintiff as follows:

"Your letter of the 3d is at hand. I would be glad if you could make a deal and to a good man that will improve the land. I would also be glad if you can make some money out of the deal so that everything will be satisfactory. It will be hard for me to meet my bills this fall if I do not get any money down, but it will not be any better if I should not make a deal. So, you make a deal if you can. I do wish I knew what I could get out of that crop. I can get anything I want but money. Well, do the best you can and as quick as you can, that will suit me."

On November 5, 1915, the plaintiff wrote to the defendant as follows:

"I am herewith inclosing you a crop contract for the sale of your half section of land to William McMahon, of Fairbault, Minnesota, at $8,000. Mr. McMahon is to fix over the buildings and put them in a

habitable condition, also to paint them. He is to dig the rock and break 100 acres of the land before August 1, 1916. There is also a privilege in this contract for you to increase the indebtedness against the farm up to $4,500. Now it looks to me as though this is a very favorable contract for you. I am on the ground here, and intend looking after that contract and see that it is fulfilled right to the scratch, especially the first year. However, after he gets the 100 acres broke and the buildings painted and fixed up, and half of the first crop turned toward the farm, I do not think it will need as constant attention as it will during the first year. Now then, Mr. Moody, I have got to pay out quite a large commission on this deal, in fact I have to pay $2 per acre, so *I have drawn a note and mortgage, which accompanies the contract,* and if you will read the mortgage over carefully, you will note that this note and mortgage does not cut any figure unless the contract is fulfilled, so I want you to read them all over carefully and have them examined by anybody there whom you do business with, and see that they are in proper form to your satisfaction. *Then sign them, yourself and your wife, before a* notary public, both the crop contract and the mortgage, and return them to me, and this deal is then closed.

"I will assure you, however, unless Mr. McMahon falls down in the spring that you have made a sale of your farm, because if he will dig the rock and break 100 acres of that land, as is called for in that contract, and also get the buildings fixed up, I will assure you that there will be no trouble in me taking over the place and selling it to somebody else. Mr. McMahon is the party who has purchased the Nels W. Carlson farm, and he is starting up two big farms there,—a section in one farm and three quarters in the other. He is bringing some young men here from Minnesota, so I do not believe there is any question but what you will get your money very soon. Kindly sign the inclosed note contract and the mortgage, and return them to me as soon as possible."

In this letter was inclosed a crop contract for the purchase of the said land, signed by one William McMahon, and a note and mortgage for the sum of $1,000, which mortgage was security upon the premises for payment of said note, and was intended to represent the plaintiff's commission. The mortgage contained the following provision:

"The purpose of the mortgage is to secure a commission due Charles Bready on account of a contract for sale of the above-described land. It is understood between the mortgagee and the mortgagor that, in the event of William McMahon failing to perform the agreements in the referred-to contract of sale between himself and Emil Moody and Hulda Moody, that in that case this mortgage becomes inoperative. But it is further understood and agreed that the said Charles Bready shall have a reasonable time to perform the agreements entered into by William McMahon's contract, and that, in the event of the said Charles Bready completing the said contract, the title of the land shall run to Charles Bready or his assigns. It is further understood that, in the event of Charles Bready or his assigns completing the William McMahon contract, in that case, this mortgage shall be of full force and effect."

This contract the defendant refused to sign, and the plaintiff brings this action for the recovery of the $1,000 commission, which was the amount of money which he made on the sale of the land, he having sold it for $8,000 and having had a list price of $7,000 from the defendant.

The trial court found for the defendant and entered judgment dismissing the complaint on the ground that the plaintiff had wholly failed to prove that he had procured a purchaser for the above-described land, having ability to pay for the same upon the terms under which the same was listed, and that the cropping contract signed by McMahon was not in any substantial sense in compliance with the terms and conditions upon which the plaintiff was authorized to sell the said land.

In these findings the learned trial judge was correct.

The signing of the note and mortgage (and these were required to be signed by both the defendant and his wife) was a part of and a condition of the proposed sale. The offer to the defendant contained in the plaintiff's letter of October 2d expressly stated that the defendant *should get all of his money first*. It also stated that the contract when drawn should be subject to defendant's approval and along the lines mentioned. It said nothing about the execution of a commission mortgage by the defendant and his wife, nor did it say anything about the right of the plaintiff to himself take up the contract in case of the failure of the original vendee. Though it is true the defendant told

the plaintiff in general terms to do the best he could and that that would suit him, it must have been intended that the plaintiff should proceed along the general lines outlined in his letter of October 2d, and it could never have been intended or presumed that the plaintiff himself should be the purchaser. Northup v. Bathrick, 80 Neb. 36, 113 N. W. 808; Tate v. Aitken, 5 Cal. App. 505, 90 Pac. 836.

Although, also, the listing agreement provided that all payments should be made in five years from the date of sale, and this was not changed by the letters in any way, the contract provided that McMahon should have seven years in which to make the same.

There are also other variations from the terms of the original agreement and the letter of October 2d, but which need not be emphasized here.

The judgment of the District Court is affirmed.

Judge GRACE, being disqualified, did not participate.

ROBINSON, J. (concurring specially). The plaintiff appeals from a judgment against him in this suit to recover $1,605, commission on an alleged listing contract for the sale of a half section of land. The listing contract was to the effect that plaintiff might contract for the sale of the land at $7,000 net to the owner, $500 cash, and the balance on crop contract, payable in five years. The plaintiff wrote defendant offering to contract with a party for the sale of the land on different terms, "which will be of course subject to your approval." To this the answer was: "Do the best you can and as quick as you can, that will suit me." The plaintiff obtained from one William McMahon a crop contract for the purchase of the land on crop payments in seven years, without any cash payment. He mailed that proposed contract to defendant, in California, for the signature of himself and his wife, with a mortgage on the land for $1,000, payable to the plaintiff, to be executed by the defendant and his wife. He writes defendant: "I want you to see that they are in proper form, to your satisfaction." Well, they were not in proper form to the satisfaction of defendant and he returned them. He did not care to give plaintiff a mortgage on his land for $1,000 and a half of the crop grown on it during the season of 1915, worth $605, in exchange for a seven-year cropping contract with a per-

son not able to make any cash payment and of no assured responsibility. Defendant was not such a fool. It is exceedingly nervy for anyone to appeal such a case to this court or to any court.