JOHN MELZNER, Respondent, v. CHARLES TOMAN, Jr., Appellant.

(223 N. W. 691.)

Opinion filed February 19, 1929.

*C. F. Kelsch* and *M. K. Higgins,* for appellant.

*T. J. Krause* and *W. L. Smith,* for respondent.

BURR, J. This is an action to recover a broker's commission upon the sale of real estate.

The plaintiff is a real estate dealer in Mandan, in business for some twenty years. The defendant, the owner of the house and lot involved, filled out a blank form of agency furnished by the agent, which written agreement after describing the real estate, says:

"In consideration of the expense of advertising and making efforts to sell said land I hereby appoint and engage John Melzner, of Mandan, N. Dak., my exclusive agent to procure a buyer for me for said real estate for the sum of *$2,600, Twenty Six Hundred,* or such greater sum as he can secure, upon the following terms: *Terms to suit @ 6%.*

And I agree to pay him *5* per cent of said purchase money for his services, if he gets a buyer for me; and if I find a buyer myself, which I reserve the right to do, I agree to pay my said agent $2\frac{1}{2}$ per cent of said purchase money as commission for his service. Said commission shall be due and payable as soon as a buyer ready, willing and able is procured. And this agreement and Power of Agency shall be in force until the *Feb. 1—1927* day of *Feb. 1, 1927,* and thereafter until said agent receives 10 days notice in writing from the undersigned that the said instrument is cancelled.

"Dated this *17* day of *Aug. 1926.*

"*Chas. Toman, Jr.*

"Owner

"P. O. Address: *Mandan, North D.*

"*110 1st Ave. N. W.*"

The printed form had blank spaces in which the defendant himself wrote the italicized words. It is conceded the defendant never gave the plaintiff "ten days' notice in writing—that the said instrument is cancelled;" but in March 1927 sold the real estate for $2,500, to a purchaser whom he himself procured.

There are but two issues involved. Defendant says: This contract was obtained by fraud, that though he filled out the blanks himself,

nevertheless he did so without reading the printed form in its entirety, that the plaintiff claimed to be honest and reliable and told him to insert such date for the termination of the contract as defendant desired, that in response thereto he filled out and signed the contract without reading it, that as he sold the real estate himself in March 1927 for $2,500 and with the thought in mind that plaintiff's agency had expired he is not liable for the commission as he did not sell to any purchaser furnished by the plaintiff, and that the plaintiff at no time furnished a purchaser who was able, willing and ready to buy the real estate for the sum of $2,600.

Plaintiff showed he had advertised the real estate, taken nine or ten prospective purchasers to view it and otherwise expended time and money and energy in an attempt to make a sale, worked on it for about ten months, and that the sale was made by the defendant without the knowledge of the plaintiff.

The case was submitted to the jury and in addition to a general verdict the following interrogatory was submitted:

"Was John Melzner, the plaintiff, guilty of fraud in procuring the signature of the defendant, Chas. Toman, Jr., to the contract, Exhibit A?" The jury answered "Yes" to this question and returned a verdict in favor of the defendant.

At the close of the plaintiff's case the defendant moved for a directed verdict or a dismissal of the action and at the close of the entire case both parties moved for a directed verdict. After the verdict was returned plaintiff made a motion for judgment notwithstanding the verdict which was granted and judgment was entered on the order. The defendant appeals.

This is an unusual case even in brokerage actions. It is not unusual in the claim that the defendant was inveigled into signing a contract, but it is unusual in this, that here we have a case where a broker—a native of Austria-Hungary, twenty-three years of age before he came to the country, who never attended an English school, who gave a blank form to the defendant and had the defendant himself fill it out —is charged with securing the defendant's signature by fraud when the defendant, a man who attended the public schools of Mandan and reached the second year of high school, filled out the contract himself, inserted his own terms and dates, had ample opportunity to read the

contract, was not prevented from doing so, but negligently failed to read it in its entirety. No artifice was employed to prevent the defendant from reading it. There is dispute in the testimony as to whether plaintiff told defendant he would request notice of cancellation but we need not determine this. Even on defendant's denial of it there is no fraud for such provision is printed plainly in the contract as filled out. There is not a syllable of testimony showing the plaintiff misrepresented any of the terms of the contract. Defendant says that plaintiff told him he could insert any date he saw fit and the contract would terminate then, and that this was a misrepresentation because of the subsequent printed clause. The form of the contract shows it could not be so, unless the printed clause referred to was stricken out. The plaintiff was strictly correct in saying the contract would terminate on such date as the defendant chose for all the defendant had to do was to give plaintiff ten days' notice that the contract would terminate on said date, and that would end it. Thus there is no fraud shown. A contract will not be set aside because one of the parties failed to read a portion of the contents before he signed it, when he had ample opportunity to read it and to know the contents, and no misrepresentation as to the terms was made to him. Embden State Bank v. Shea, 50 N. D. 455, 196 N. W. 307; Little v. Little, 2 N. D. 175, 49 N. W. 736. See also Rokusek v. National U. F. Ins. Co. 50 N. D. 123, 135, 195 N. W. 300. The law does not protect a man against himself.

Defendant says that even if the contract be not tainted with fraud plaintiff cannot recover because he did not procure a purchaser able and ready and willing to buy the property for $2,600 and cites the case of Graugaard v. Betzina, 33 N. D. 267, 156 N. W. 1035, as authority. The case cited lays down the general rule that before a broker can recover his commission he must furnish a purchaser able, ready and willing to buy at the price stated and that where the owner "thereafter sold the land to such purchaser at a lower price, and where there is no proof that the owner did not act in good faith or that he prevented the broker from performing his contract" the broker cannot recover. The case cited is in harmony with the general holding of this court in similar cases. See Larson v. Newman, 19 N. D. 153, 23

L.R.A.(N.S.) 849, 121 N. W. 202, and Bready v. Moody, 38 N. D. 331, 164 N. W. 946. These cases, however, do not apply to the case at bar. They are applicable to cases where the broker seeks to recover because of the buyer he procured.

It may be conceded that even where a broker is by the terms of the contract given an exclusive right to sell this does not prevent the owner from making an independent sale, and where the broker is not the inducing cause of the sale he may not recover a commission; but in this case there is an express agreement to pay a commission on a sale made by the owner if made within the time limits of the contract. The defendant reserved the right to "find a buyer myself," and agreed that if he did so he would "pay my said agent $2\frac{1}{2}$ per cent of said purchase money as commission for his service." The defendant recognized the plaintiff might be put to the expenditure of time, energy and money and yet because the owner might himself get a buyer the broker would not get any compensation under the usual rules. He agreed therefore to pay the broker something for such services and this amount he fixed at one half of the commission the broker would have received had he furnished a buyer at the terms stated.

The defendant argues that it was only in case the defendant sold the house for $2,600 or more the broker would get one half of the commission; that the term "$2\frac{1}{2}$ per cent of said purchase money as commission" refers to the $2,600 already specified; that if sold for less there was no agreement to pay commission, that as $2,500 was all that was received for the real estate defendant is not entitled to recover under his contract; that this is an action on a specific contract and not for quantum meruit.

In the contract the defendant does not limit liability to pay one half of the commission to cases where he himself procured a buyer for $2,600 or over. He says he will pay one-half of the commission "if I find a buyer myself." He does not say a "buyer for $2,600 or over." He does not limit himself to any specified purchase price, he drew the contract himself, and the term "said purchase price" is merely the basis for computing the commission. The defendant argues this is $2,600 and not $2,500 so we need not dwell on this feature.

It is admitted the defendant never terminated the contract and so

the plaintiff is entitled to recover his $2\frac{1}{2}$ per cent of "such purchase price" mentioned in the contract, to wit $2,600. The judgment of the lower court is affirmed with costs to the plaintiff.

BURKE, Ch. J., and NUESSLE, BIRDZELL, and CHRISTIANSON, JJ., concur.