Beulah A. BIBY, Plaintiff and Appellant,

v.

**UNION NATIONAL BANK OF MINOT,**
Defendant and Respondent.

Civ. 8481.

Supreme Court of North Dakota.

Nov. 4, 1968.

Bjella, Jestrab, Neff & Pippin, Williston, for plaintiff and appellant.

Palda, Palda, Peterson, Anderson & Tossett, Minot, and Dorsey, Marquart, Windhorst, West & Halladay, Minneapolis, Minn., for defendant and respondent.

STRUTZ, Judge.

This is an action by the plaintiff against the Union National Bank of Minot for damages arising out of the alleged false arrest of the plaintiff. The plaintiff was an officer and employee of Sierra Western Trucking, Inc., the trade name used by the plaintiff and her husband in doing business for Sierra Western, a Nevada corporation, of which the plaintiff and her husband were shareholders and officers. Sierra Western was engaged in buying grain in the State of North Dakota, as a foreign corporation, and it had opened an account in the defendant bank in connection with such business. It is contended by the defendant bank, and is not denied by the plaintiff, that Sierra Western had not complied with the provisions of Section 10-22-01 of the North Dakota Century Code which requires that a foreign corporation secure a certificate of authority to do business in the State before commencing such business.

In addition to operating a regular banking business, the defendant operates a travel bureau through which it sells airline, train, and steamship tickets for the convenience of the general public. No issue is raised as to whether the sale of airline tickets was a proper part of the business of the defendant bank.

On or about September 27, 1963, the plaintiff purchased from the defendant's travel bureau two airline tickets for air transportation from Minot to Portland, Oregon, for herself and for her husband. She gave to the defendant a check of Sierra Western in the sum of $570.15 drawn on the Guardian Bank of North Hollywood, California. On Monday, October 14, 1963, this check was returned to the defendant because of insufficient funds.

After the purchase of the airline tickets, the plaintiff purchased grain from one Justin Aagvik in McKenzie County and gave Aagvik a check drawn on the defendant bank in the sum of $614.25 in payment thereof. This check was deposited by the payee in the First International Bank of Watford City, and it was forwarded to the defendant bank for collection via the Federal Reserve Bank clearinghouse in Minneapolis. The Aagvik check was received by the defendant bank on October 11, 1963, which was a Friday. On that date, Sierra Western Trucking, Inc., had a balance on deposit in the defendant bank of $915.90, sufficient to pay the Aagvik check. Because the check was received on Friday, October 11, too late to be processed on that day, the check was not presented for payment until the following bank day which was Monday, October 14. Prior to the time the check was processed, however, the check which the plaintiff had given to the defendant bank's travel bureau was dishonored and returned to the defendant. The defendant bank, instead of honoring the Aagvik check, deducted the sum of $570.15, the amount of the check given for airplane tickets, from the balance which Sierra Western Trucking, Inc., had on deposit. It than failed to honor the Aagvik check and returned it marked "NSF," since after making such deduction there was not sufficient money in the account to pay the amount due on this check. The defendant bank immediately notified the plaintiff by air mail-registered letter, informing her of the setoff and enclosing the NSF check which she had given for plane tickets and which the bank had collected by deducting the amount due on it from the balance Sierra Western Trucking, Inc., had on deposit in the bank.

When the check given to Aagvik for the purchase of grain was returned to him marked "NSF," he signed a criminal complaint against the plaintiff charging her with the crime of obtaining property by false pretenses. A warrant was issued for plaintiff's arrest, and she was arrested in Las Vegas, Nevada. The charge against the plaintiff later was dismissed on the ground that when the check was given to Aagvik there was sufficient money on deposit in the defendant bank to pay it.

Plaintiff thereafter brought this action for damages for false arrest, demanding the sum of $450,350 actual damages and the sum of $300,000 exemplary damages. After the defendant had answered and issue was joined, the plaintiff moved for partial summary judgment on the issue of the defendant's liability only. The defendant countered by making a motion for summary judgment in its favor. The two motions were argued and submitted to the Honorable Eugene E. Coyne, District Judge, who, after considering the motions, entered an order denying the plaintiff's motion for partial summary judgment and ordering summary judgment in favor of the defendant, dismissing the plaintiff's complaint. Summary judgment thereupon was entered on such order, and the plaintiff appeals from such summary judgment.

■■■ The first question for us to determine is whether summary judgment was properly ordered against the plaintiff. Here, both parties have moved for summary judgment under Rule 56, North Dakota Rules of Civil Procedure. The mere fact that both parties have moved for summary judgment does not establish that there is no material issue of fact to be determined. Barron & Holtzoff, Federal Practice and Procedure, Vol. 3, Sec. 1239, p. 176. A party may concede that there is no genuine issue of fact, if the court should adopt his theory of the law, but at the same time maintain that there is an issue of fact to be determined if the court should adopt the legal theories of his opponent. Walling v. Richmond Screw Anchor Co., 154 F.2d 780

(2d Cir. 1946), cert. denied 328 U.S. 870, 66 S.Ct. 1383, 90 L.Ed. 1640. Thus both motions for summary judgment should be denied if the court finds that there is a material issue of fact if the legal theory of either party is not followed. We believe this to be the better rule, although we acknowledge that there is some authority to the effect that by making cross-motions for summary judgment both parties concede, for the purpose of such motion made by each, that there is no genuine issue of fact to be decided. We find that the legal theories which any party advances in support of his own motion for summary judgment, and his assertion, in support of that motion, that there is no issue of fact, are urged only for the purposes of his own motion and may not be used against him to grant his opponent's motion for summary judgment. In Montana-Dakota Utilities Co. v. Johanneson, 153 N.W.2d 414 (N.D. 1967), in paragraph 2 of the syllabus, we did say that where there is no genuine issue of fact for the trial court to determine, entry of summary judgment by the trial court, on motion, is proper. However, in that case, all parties moved for summary judgment, and, in addition, agreed that there was no material issue of fact for the court to decide. It was because of this agreement, which was sustained by the pleadings, affidavits, and admissions, and not because of the motions, that we did not consider whether there existed any issue of fact in the case, but applied the law to the facts conceded.

The basis of the plaintiff's action against the defendant bank is that, under North Dakota law, the bank could not lawfully deduct the amount of the NSF check which the plaintiff had given to the bank's travel bureau for airplane tickets, without legal process or without the consent of the depositor. The plaintiff makes no claim that she did not give a check without sufficient funds to the travel bureau. Her claim is that the check on which she was arrested—the Aagvik check given for grain—was not given without sufficient funds and that the bank had *no legal authority to*

set off, from the deposit in the bank's possession, the amount due it on the NSF check which the plaintiff had given for airplane tickets.

■ Generally, a bank may apply a debtor's deposits on the payment of the debtor's liabilities to the bank as they mature. Mayo v. Pioneer Bank & Trust Co., 270 F.2d 823 (5th Cir. 1959); First National Bank of Negaunee v. Fox, 111 F.2d 810 (6th Cir. 1940).

In fact, the Supreme Court of California has held that the relationship between depositor and bank being that of creditor and debtor, whenever a debt of the depositor becomes due, the bank has the right of setoff to the extent of any debt it then holds against the depositor, as against the debt the bank owes the depositor by reason of such deposit. Bromberg v. Bank of America National Trust & Savings Ass'n, 58 Cal.App.2d 1, 135 P.2d 689 (1943).

Other jurisdictions have reached the same conclusion. Munday v. Bank of Franklin, 211 N.C. 276, 189 S.E. 779 (1937); W. C. Caye & Co. v. Milledgeville Banking Co., 91 Ga.App. 664, 86 S.E.2d 717 (1955).

Courts are satisfied, upon slight evidence, in holding that a party, by depositing funds in a bank, authorizes the application of such funds on the debt due the bank from the depositor. Shotwell v. Sioux Falls Savings Bank, 34 S.D. 109, 147 N.W. 288, L.R.A.1915A, 715 (1914); 10 Am.Jur.2d Banks, Sec. 666, p. 635.

This setoff is permitted because funds on general deposit are the property of the bank for which the bank is debtor to the depositor, and a general deposit made while the depositor is indebted to the bank raises an implied consent to application of the deposit to the payment of such debt. The fact that at the time such setoff is made there is an outstanding check in existence does not of itself deprive the bank of the right to set off a deposit against the depositor's debt to the bank, although it has been held that such right does not exist where the check is presented before setoff is claimed. 9 C.J.S. Banks and Banking § 307, p. 634.

North Dakota, however, does not follow this general rule. We have a specific statute covering the right of a bank to apply money on deposit to the payment of a debt of the depositor to the bank. Section 6–03–67, North Dakota Century Code, provides:

> "It shall be unlawful for any banking association to charge any claim which it might have, or the claim of any other person, against a deposit made with the association, or to ·appropriate a deposit or any part thereof to the payment of any debt to such association, without legal process or the consent of the depositor. Any banking association which violates this section shall be liable to the party aggrieved for any damages caused by such violation."

The defendant is a national bank, regulated by the Congress, and it raises the issue of the validity of this statute as applied to national banks. Generally, national banks are regulated by the Congress, and State legislatures may not interfere with their operation. In other words, national banks are instrumentalities of the Federal Government, created for a public purpose, and subject to the paramount authority of the United States. 10 Am.Jur.2d Banks, Sec. 14, p. 38.

■ A national bank is, however, subject to all State laws that are not in conflict with Federal laws and regulations. McKee & Co. v. First National Bank of San Diego, 265 F.Supp. 1 (D.C.1967). In other words, a national bank will be subject to State laws so long as such laws do not interfere with the purposes of the bank's creation and do not conflict with Federal laws. Flood v. City National Bank of Clinton, 220 Iowa 935, 263 N.W. 321, cert.

denied, 298 U.S. 666, 56 S.Ct. 749, 80 L.Ed. 1390.

■ Thus a national bank is subject to State laws unless State laws impose an undue burden upon the performance of the bank's functions. Anderson National Bank v. Luckett, 321 U.S. 233, 64 S.Ct. 599, 88 L.Ed. 692.

It has been suggested that if a national bank is not subject to State laws, it will not be bound by State laws fixing rates of interest which may be charged. This matter presents no problem, for Federal law expressly provides that the rate of interest to be charged by a national bank is to be determined by the law of the State where the bank is located. U.S.C.A., Title 12, Banks and Banking, Sec. 85; Hiatt v. San Francisco National Bank, 361 F.2d 504 (9th Cir. 1966).

Thus any attempt on the part of the State of North Dakota to define the duties of a national bank or to control or regulate the conduct of the affairs of a national bank would be void if such attempted exercise of authority or control conflicts with the laws of the United States or if it tended to impair the efficiency of the bank's operation.

■ Would Section 6–03–67, North Dakota Century Code, which makes it unlawful for any banking association to charge any claim which it might have against a deposit made with the bank, without legal process or without the express consent of the depositor, impair the efficiency of the bank so that its provisions may not be applied to a national bank?

If we were to adopt the views of the plaintiff, that this law requires the bank to use legal process or to get the express consent of the depositor in every instance before the bank may charge a claim it might have against the deposit of the depositor, it would hamper the operation of the bank and, in effect, make such operation impossible, or at least impair its efficiency. Certain charges are made by every bank against the deposits of its depositors every month, such as charges for numerous services which now are rendered by banks. If plaintiff's position is sound, a bank would be required, in each instance, to secure the consent of the depositor before setting off various charges against his deposit, and the operation of a bank would become so involved with detail that its efficiency would be seriously impaired. In fact, a banking operation, as we know it, could not be conducted under those circumstances. Such an interpretation of our law would impair the efficiency of the bank.

■ We believe, therefore, that the consent required under the provisions of the above statute may be obtained from the depositor at the time he opens his account. If, at the time the plaintiff opened the account with the defendant bank, she consented to abide by the defendant's rules, including the rule which gave consent to the bank to set off or charge against the bank account all or any part of any debt or obligation owed to the bank by the depositor, the obtaining of such consent would, in our opinion, be a sufficient compliance with the requirements of Section 6–03–67, North Dakota Century Code.

We therefore must determine whether the record in this case shows that the plaintiff consented to abide by the defendant's rules, which would include the rule giving consent to the bank to set off or charge the account which the plaintiff was opening with any debt or obligation owed to the bank. The corporate-authorization resolution, executed by the depositor's officers and signed by the plaintiff as one of such officers of the depositor, specifically provides that the defendant bank is designated as depository of the corporation and that the persons named in such resolution, being the plaintiff as secretary and the plaintiff's husband as president of the company, be authorized to open accounts in the defendant bank, and that *they further were*

*authorized to execute and deliver to the defendant a signature card assenting to the bank's rules and regulations governing bank accounts.*

Not only did the plaintiff sign the resolution which authorized her to execute and deliver to the defendant bank a signature card agreeing to the rules and regulations of the bank, but the record also discloses that she actually did sign a signature card. But the card is not in evidence, and evidently it was lost in the move of the bank to its new location sometime after this account was opened. The plaintiff, in written interrogatories, admitted that she signed a signature card in September of 1963. The bank contends that the card in use at that time had on it the notation,

"* * * this account shall be subject to the Bank's Rules and Regulations Governing Bank Accounts as now posted publicly in its banking premises."

The rules as posted contained the following provision:

"Each depositor authorizes the Bank at any time as the Bank may elect to offset or charge against his bank account all or any part of any debt or obligation owed to the Bank by the depositor, * * *"

The plaintiff, however, denies that the card which she signed contained any such authorization. This squarely raises an issue of fact for the jury. While the plaintiff admits that she did sign a signature card, the question is whether this card contained an authorization to the bank to charge against its bank account any claim it might have against the depositor. The plaintiff says it did not. The defendant contends that it did. Whether or not such authorization or consent was given by the plaintiff is a question of fact for the jury to determine. If the jury should find that the plaintiff did sign such authorization, the mere fact that the consent was in smaller print than the balance of

the card, or that the plaintiff may not have read the card and did not know that by signing it she was consenting to a setoff, is no defense. The signing of a contract or agreement in ignorance of its contents is no defense to the agreement, in the absence of fraud or artifice by the other party. Oliver-Mercer Electric Cooperative, Inc. v. Fisher, 146 N.W.2d 346 (N.D.1966); Hanes v. Mitchell, 78 N.D. 341, 49 N.W.2d 606 (1951); Melzner v. Toman, 57 N.D. 639, 223 N.W. 691 (1929); Minneapolis Threshing Machine Co. v. Hocking, 54 N.D. 559, 209 N.W. 996 (1926); Embden State Bank v. Shea, 50 N.D. 455, 196 N.W. 307 (1923). No fraud on the part of the defendant is claimed by the plaintiff.

Therefore, if the plaintiff, in fact, did sign a signature card consenting that the account should be subject to the bank's rules and regulations governing bank accounts, as posted publicly in the bank, and if the bank, in fact, did have posted such rules, including a statement that each depositor authorized the bank at any time to set off or charge against the depositor's account any debt or obligation owed to the bank by the depositor, then the plaintiff did consent to such charge or setoff in accordance with Section 6–03–67, North Dakota Century Code. The plaintiff denies that she signed such consent, and thus we have a question of fact which must be determined by a jury. Summary judgment should be granted only where it is clear that there are no issues of fact to be determined in the case.

For the purposes of this case, there is no issue of fact to be determined as to whether the sale of airline tickets was made by the defendant and whether such sale created a debt or claim from the plaintiff to the defendant. The assistant cashier of the defendant testified by deposition that the travel bureau is a branch of the defendant bank's business. The plaintiff, in her amended complaint, in both her first and second claims against the defendant, alleges that the defendant, in addition to its other activities, sells airline and other

transportation tickets; that the defendant sold airline tickets and issued them in the name of the plaintiff and her husband; that the amount of such claim was charged to the deposit of Sierra Western Trucking, Inc. Nowhere in the affidavit or deposition submitted by the plaintiff in opposition to the defendant's motion for summary judgment does the plaintiff raise an issue of whether the sale of the tickets created a debt from the plaintiff to the defendant. Thus the fact that the plaintiff was indebted to the defendant was not raised as an issue in this case, and the plaintiff concedes that she was indebted to the defendant for such tickets, and that when the check given for the tickets was dishonored and returned, the amount due for such tickets remained a debt to the defendant bank.

One other issue remains to be determined in this case, and that is whether the Aagvik check was presented to the bank before the setoff was claimed by the bank of the debt due it for the tickets. The plaintiff contends that when the Aagvik check was presented to the bank, the bank had no knowledge or information that the plaintiff was, in fact, indebted to it in any amount. The defendant, on the other hand, asserts that both the Aagvik check and the NSF check for the tickets were before it as items of business on the same day. Just what the facts were should be determined by the jury.

For reasons set forth herein, there were issues of fact remaining to be determined in this lawsuit when the motions for summary judgment were made. Since that was the case, it was improper for the trial court to grant the defendant's motion for summary judgment.

The summary judgment of the trial court is reversed, and the cause is remanded for further proceedings consistent with this opinion.

TEIGEN, C. J., and ERICKSTAD, PAULSON and KNUDSON, JJ., concur.